**UNITED STATES of America,**

v.

**Dale A. WEIDNER.**

**No. SCr. 88–15.**

United States District Court,
N.D. Indiana,
South Bend Division.

Sept. 19, 1988.

**1352**

Rick L. Jancha, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Stephen G. Drendall, South Bend, Ind., for defendant.

## SENTENCING MEMORANDUM

MILLER, District Judge.

### I. The Offense

Dale A. Weidner is 28 years old. On February 16, 1988, drug task force officers executed a search warrant on his property. Inside a pole barn, the agents found a sophisticated manufacturing process for high-grade marijuana, and more than 100 marijuana plants. The agents found various chemicals, halogen glow lights, specialized growing/drying machines, aluminum foil on the walls, a charcoal air filtering system, a humidifier, a carbon dioxide tank, and ceiling fans.

The pole barn was divided into three rooms. The marijuana operation, consisting of two rooms, was at the rear; the front contained a body shop business operated by another person. There was no interior access between the body shop room and the first room of the marijuana operation. The agents found a loaded .16 gauge Browning semi-automatic shotgun in the corner, to the right of the exterior door leading into the first room of the marijuana operation. A six-foot electrical cord was tied to the shotgun's trigger. The government contends that the shotgun was used as a "trip gun" or "booby trap", although the trap was not activated at the time of the raid. Mr. Weidner testified that he never actually used the shotgun as a "trip gun", but rather intended to lead those who might be in the barn to believe the barn was booby-trapped when Mr. Weidner was away.

Mr. Weidner had given up his legitimate employment to raise marijuana full-time. He worked at his trade twelve hours a day, seven days a week, growing a cross between Hawaiian and Afghanistan marijuana. He began his operation for personal use, growing safe marijuana and avoiding the need to do business with drug dealers. As his production expanded, he began selling his product to close friends. Mr. Weidner made approximately $30,000.00 in the fifteen months of his operation. He sold about three-fourths of what he grew.

Mr. Weidner was charged in a four-count indictment. Count 1 charged him with unlawful manufacture of more than 100 marijuana plants. 21 U.S.C. § 841(a)(1). Count 2 charged him with possession with intent to distribute marijuana. 21 U.S.C. § 841(a)(1). Count 3 charged him with possession of a dangerous weapon (the semi-automatic shotgun) during the manufacture of more than 100 marijuana plants. 18 U.S.C. § 924(c)(1). Count 4 charged him with possession of a dangerous weapon during the possession of marijuana with intent to distribute marijuana. 18 U.S.C. § 924(c)(1).

Mr. Weidner has tendered pleas of guilty to Counts 1 and 2 of the indictment in exchange for the government's agreement that the sentences shall be served concurrently and for the dismissal of Counts 3 and 4.

Manufacture of more than 100 marijuana plants is punishable by imprisonment for not more than twenty years, a fine of as much as $1,000,000.00, and a mandatory supervised release term of at least three years. Possession with intent to distribute marijuana is punishable by imprisonment for not more than five years, a fine of not more than $250,000.00, and a mandatory supervised release term of at least two years. Because the offenses occurred after October 12, 1984, Mr. Weidner also faces mandatory special assessments of $50.00 on each count. Because the offenses occurred after November 1, 1987, the Sentencing Guidelines are applicable. The court earlier denied Mr. Weidner's motion to declare the Guidelines unconstitu-

tional. *United States v. Weidner*, 692 F.Supp. 968 (N.D.Ind.1988).

## II. Application of the Sentencing Guidelines

### A. Offense Level

The court first must determine the guideline section in Chapter Two of the Guidelines most applicable to the statute of conviction. § 1B1.1(a). That section is § 2D1.1(a)(3).

#### 1. Base Offense Level

The court then must determine the base offense level and apply any appropriate specific offense characteristics contained in the particular guideline. § 1B1.1(b). In making that determination, the court must consider all relevant conduct and circumstances, including those acts or omissions of the defendant that are part of the same course of conduct as the offense of conviction, or are relevant to the defendant's mental state or motive, or indicate the defendant's degree of dependence upon criminal activity for a livelihood. § 1B1.3.

##### a. The Quantity of Marijuana

Section 2D1.1(a) directs the court to refer to the Drug Quantity Table to determine the base offense level; that table provides that the base offense level for an offense involving at least 100, but less than 199, marijuana plants is 16.

##### b. The Firearm

■ Section 2D1.1(b)(1) provides that if a firearm or other dangerous weapon was possessed during commission of the offense, the offense level must be increased by two levels. Mr. Weidner challenges the applicability of this section on the grounds that there is no evidence that the shotgun was actually ever used as a booby trap, or used to threaten any person, or possessed in connection with the commission of an offense. Application Note 3 provides guidance in resolving this objection:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

Mr. Weidner intended the shotgun to defend his operation by making other believe they would be shot if they attempted unauthorized entry, and the electrical wire attached to the shotgun is inexplicable under any theory other than intended use or apparent use as a booby trap. Even if the preparation for that use was incomplete, and the weapon was never so used, the weapon was present and intended for use in guarding the marijuana. The court increases the offense level to 18.

#### 2. Adjustments to the Base Offense Level

The court next must apply adjustments related to victim, role and obstruction of justice, § 1B1.1(c), and acceptance of responsibility, § 1B1.1(e).

##### a. Victim–Related Adjustments; Obstruction of Justice

There are no victim-related adjustments to consider. Mr. Weidner did not willfully impede or obstruct the administration of justice or attempt to do so. § 3C1.1. The parties dispute the application of the remaining potential adjustments.

##### b. Role in the Offense

■ Section 3B1.1(a) provides that if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive", the offense level should be increased by four levels. The government and the probation officer contend that this section should apply to Mr. Weidner, who contends that it should not.

Mr. Weidner argues that he was not an organizer or leader. He argues that his manufacture and possession of marijuana involved no others, so § 3B1.1(a) does not apply. The probation officer and government argue that when one considers Mr. Weidner's customers, his operation was

"otherwise extensive" within the meaning of § 3B1.1(a). *See* Application Note 2. The probation officer and the government also note that Application Note 3 directs the court to consider "the exercise of decisionmaking authority, the nature of participation in the commission of the offense, the recruitment of accomplices ... the degree of participation and planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over the others."

The court has no quarrel with the proposition that Mr. Weidner's operation was extensive and well-planned. He harvested approximately $3,000.00 worth of high grade marijuana each month. Section 3B1.1(a), however, requires not only that the operation be extensive or have five or more participants, but also that the defendant be an organizer or leader. The record does not support the proposition that Mr. Weidner organized or led anyone. One who commits a series of solitary crimes does not become an organizer or leader because his crime is extensive; one ordinarily does not, simply by virtue of selling drugs, lead or organize those to whom he sells.

The court agrees with the defendant that the offense level cannot be increased pursuant to § 3B1.1(a).

#### c. Acceptance of Responsibility

Section 3E1.1(a) allows the offense level to be reduced by two levels if "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction". Section 3E1.1(c) provides that a guilty plea does not alone warrant such a finding. Mr. Weidner claims entitlement to this reduction. He points to his extensive and detailed debriefing with representatives of the U.S. Attorney's Office, the Indiana State Police and the Internal Revenue Service. He states that he has ceased using marijuana and obtained steady employment. His actions, he maintains, go far beyond merely pleading guilty and should be found to be acceptance of responsibility.

The probation officer and the government disagree, based on: (a) Mr. Weidner's statement that he does not believe growing marijuana and selling it to adults is wrong; (b) Mr. Weidner's production of a urine sample that tested positive for THC during his pretrial release; and (c) the government's doubts concerning Mr. Weidner's honesty with the investigative agents.

 The court cannot agree that Mr. Weidner's comments concerning the wrongfulness of his conduct foreclose a finding of acceptance of responsibility. A criminal defendant need not confess the moral wrongfulness of his actions for the court to reduce the offense level pursuant to § 3E1.1.

 The remaining factors noted by the government and the probation officer, however, weigh against a finding that Mr. Weidner "clearly demonstrates a recognition and affirmative acceptance of personal responsibility". Application Note 1(a) to § 3E1.1 suggests that the court consider whether the defendant voluntarily terminated or withdrew from criminal conduct or association. The results of Mr. Weidner's urine tests, while not conclusive proof, indicate that he had not withdrawn from criminal activity while on pretrial release.

Application Note 1(c) stresses truthful admissions to investigative authorities; if Mr. Weidner's cooperation with investigators has been less than truthful, his claim to reduction in offense level is undermined. The court does not believe that a defendant should be denied a reduction in offense level solely because of investigative agents' conclusory doubts as to his truthfulness, and it is noteworthy that the government has not exercised its right under the plea agreement to set aside the plea agreement for want of truthful cooperation. Nevertheless, the court shares the investigative agents' skepticism. Mr. Weidner told the agents of four or five customers, and reports that he restricted those customers to purchasing for their personal use. Yet he appears to have distributed marijuana worth $2,000.00 each month and was un-

able to identify the source of amphetamines found in the pole barn.

The Sentencing Guidelines to do not suggest that the reduction allowed by § 3E1.1 is be applied routinely. To be entitled to the reduction for acceptance of responsibility, Mr. Weidner must not only demonstrate his acceptance of responsibility. He must do so clearly. In light of Mr. Weidner's performance on pretrial release and his lack of candor in cooperation with authorities, the court finds that he has not done so.

The court finds no adjustment for acceptance of responsibility appropriate.

Mr. Weidner's adjusted offense level is 18.

### B. Criminal History Category

The court next must determine the defendant's criminal history category as specified in Part A of Chapter Four. § 1B1.1(f). Mr. Weidner has no prior convictions. Accordingly, he is to be placed in Criminal History Category I on the Sentencing Table. Chapter 5, Part A.

### C. Guideline Range

The court next must determine the guideline range in Part A of Chapter Five, the sentencing table, that corresponds to the offense level and criminal history category, § 1B1.1(g), and, for that guideline range, determine the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines and restitution. § 1B1.1(h).

#### 1. Sentencing Table

An offender in Criminal History Category I and an offense level of 18 faces a guideline range of twenty-seven to thirty-three months. Chapter 5, Part A.

#### 2. Probation

Mr. Weidner is ineligible for probation because his offense is a Class B felony. 18 U.S.C. § 3561(a)(1).

#### 3. Supervised Release

If the court imposes a sentence of more than one year, the court must order a term of supervised release to follow imprisonment. § 5D3.1. The Guidelines and statute each require imposition of at least three years' supervised release on Count 1. § 5D3.2(b)(1). The supervised release cannot exceed five years. § 5D3.2(a). If supervised release is ordered, the court must, as a condition thereof, order that the defendant not commit another federal, state or local crime, § 5D3.3(a), and may impose any other conditions that are reasonably related to the nature and circumstances of the offense and the defendant's history and characteristics. § 5D3.3(b).

#### 4. Restitution

Restitution ordinarily is required. Section 5E4.1(a) requires that restitution be ordered for convictions under Title 18 of the United States Code or under 49 U.S.C. § 1472(h), (i), (j) or (n). Mr. Weidner has not been convicted under those provisions.

#### 5. Fine

For offense level 18, the table set forth in § 5E4.2(c)(3) requires imposition of a fine of not less than $6,000.00. The maximum fine is $1,000,000.00. § 5E4.2(c)(4)(A). The Sentencing Guidelines require that the fine be of a sufficient amount to be punitive, § 5E4.2(e), take into account the various factors set forth in § 5E4.2(d), and be sufficient to pay the costs to the government of any imprisonment, probation or supervised release ordered. § 5E4.2(i). According to the Administrative Office of the United States Courts, the monthly cost for imprisonment is $1,221.00; the monthly cost for supervision is $83.33.

If the defendant establishes either that he is unable, and unlikely to become able to, pay all or part of the fine required by the Guidelines, or that imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine. In that event, the court still must consider alternative sanctions and impose a punitive total combined sanction; community service is the generally preferable alternative. § 5E4.2(f).

#### 6. Special Assessment

The court must impose a special assessment of $50.00 on each count. § 5E4.3; 18 U.S.C. § 3013.

7. Adjustment for special offender characteristics or grounds for departure

■ The court may impose a sentence outside the Guidelines if it finds such a course warranted by a circumstance to which the Sentencing Commission gave inadequate consideration. 18 U.S.C. § 3553(b); § 5K2.0. Here, however, the court finds no basis for departure from the Guidelines.

Mr. Weidner argues that he has provided substantial assistance to authorities, and so seeks departure pursuant to § 5K1.1. That section, however, allows departure only upon motion of the government, which, believing that Mr. Weidner has been less than candid, has made no such motion. Absent such a motion by the government, the court cannot depart pursuant to § 5K1.1.

Mr. Weidner also argues that the Guidelines inadequately consider his lack of prior criminal record, the nondeprivatory nature of his offense, that his distribution was limited to adult friends, his employment status, that he supports a wife and stepchildren, and the family circumstances of his youth.

The Guidelines address most of those factors. Criminal history is relevant under the Guidelines, § 5H1.8, and Mr. Weidner's placement in Criminal History Category I reflects the lack of a prior record. That the court might disagree with the weight the Commission attributed to a clean prior record cannot constitute grounds for departure; departing on such grounds would undermine the Congressional intent to reduce the disparity in sentencing from one court to the next. *Cf.* 28 U.S.C. § 994(j).

Mr. Weidner's base offense level is determined by reference to the nature of the crime, which does not assume violence or theft. Sections 5H1.5 and 5H1.6, policy statements, provide that employment and family responsibilities ordinarily are not relevant in determining whether a sentence should be outside the Guidelines; Mr. Weidner has pointed to nothing that would render his circumstances out of the ordinary.

The court cannot hold that the Guidelines do not adequately take into consideration that Mr. Weidner distributed marijuana only to adult friends. The Guidelines provide for the doubling or tripling of offense levels if juveniles are involved in drug offenses. *See* § 2D1.2(a). The court concludes that the base offense level assumes that no juveniles were involved.

The Guidelines concededly do not consider the unfortunate circumstances of his youth. In other cases, such a consideration might warrant departure. The offense level also does not consider, however, that Mr. Weidner's livelihood depended upon his criminal activity, which under other circumstances would warrant imposition of a sentence greater than that provided by the Guidelines. § 5H1.9. Further, the court might impose a sentence outside the Guidelines due to the extensiveness and duration of Mr. Weidner's conduct. *See* §§ 5K2.0, 5K2.8. The government has not argued, however, that the court should impose a sentence greater than that allowed by the Guideline range.

On balance, the court concludes that it should not depart from the Guidelines.

### D. Sentencing Decision

#### 1. Imprisonment

■ Although the number of marijuana plants involved here was near the minimum covered by the Guideline range, because of the sophistication and duration of the manufacturing operation, and because the manufacture of marijuana was Mr. Weidner's principal, and often sole, source of income, the court deems a sentence of thirty-three months, the maximum allowed by the sentencing range, to be appropriate.

Accordingly, the court concludes that the defendant should be committed to the custody of the Attorney General or his authorized representative for imprisonment for a term of thirty-three months.

#### 2. Supervised Release

A four-year supervised release term should be imposed. Mr. Weidner has a lengthy history of substance abuse. A period of supervised release in excess of the

minimum is appropriate to monitor his drug use.

### 3. Fine

The government does not appear to dispute that Mr. Weidner is unable to pay a fine. Accordingly, the court concludes that the fine required by the Guidelines should be waived. In lieu of the fine, the defendant should be ordered to provide 1,040 hours of community service during his supervised release. § 5E4.2(f).

### 4. Special assessment

Special assessments of $50.00 must be imposed on each count and shall be due immediately.

## III. Conclusion

Based on the foregoing, the court accepts the defendant's pleas of guilty to Counts 1 and 2, and adjudges that the defendant is hereby committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for terms of thirty-three (33) months on each count, to be served concurrently. It is further ordered that the defendant serve a supervised release term of four (4) years, subject to the following terms and conditions which were selected in light of the nature and circumstances of the offense and Mr. Weidner's history and characteristics:

(1) the defendant shall not commit another federal, state or local crime during the period of supervision (§ 5B1.3(a));

(2) the defendant shall not leave the Northern District of Indiana or other specified geographic area without permission of the court or probation officer (§ 5B1.4(a)(1));

(3) the defendant shall report to the probation officer as directed by the court or the probation officer, and shall submit a truthful and complete written statement within the first five days of each month (§ 5B1.4(a)(2));

(4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer (§ 5B1.4(a)(3));

(5) the defendant shall support his dependents and meet other family responsibilities (§ 5B1.4(a)(4));

(6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons (§ 5B1.-4(a)(5));

(7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment (§ 5B1.4(a)(6));

(8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician (§ 5B1.4(a)(7));

(9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court (§ 5B1.4(a)(8));

(10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer (§ 5B1.4(a)(9));

(11) the defendant shall permit a probation officer to visit at any time at his home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer (§ 5B1.4(a)(10));

(12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer (§ 5B1.4(a)(11));

(13) the defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court (§ 5B1.4(a)(12));

(14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by his criminal record or personal history or characteristics, and shall permit the probation officer to confirm his compliance

**1358**

with such notification requirement (§ 5B1.4(a)(13));

(15) the defendant shall participate in a program approved by the probation officer for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol (§ 5B1.4(b)(23));

(16) the defendant shall not possess any firearms or dangerous weapons (§ 5B1.4(b)(14)); and

(17) the defendant shall perform 1,040 hours of community service during his term of supervised release (§ 5E4.2(f)).

It is further ordered that the defendant shall pay to the United States a special assessments of $50.00 on each count, which shall be due immediately.

SO ORDERED.