UNITED STATES of America,
Appellant,

v.

Damon Rae PRESTEMON, Appellee.

No. 89–5543.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1990.

Decided April 4, 1991.

Rehearing and Rehearing En Banc
Denied May 17, 1991.

Jeffrey S. Paulsen, Minneapolis, Minn.,
for appellant.

Scott F. Tilsen, Minneapolis, Minn., for
appellee.

Before McMILLIAN, Circuit Judge,
HEANEY, Senior Circuit Judge, and
ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

The United States appeals from a final
judgment entered in the District Court for
the District of Minnesota finding Damon

Rae Prestemon guilty, pursuant to a plea agreement, of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d). The district court sentenced appellee under the Sentencing Guidelines to 24 months imprisonment, 5 years supervised release, and a $50.00 special assessment. This appeal involves sentencing issues only. *See* 18 U.S.C. § 3742(b)(3). For reversal the government argues the district court abused its discretion in granting appellee a downward departure from the applicable guideline sentencing range on the basis of appellee's race and family situation, specifically the fact that appellee was a bi-racial adopted child. For the reasons discussed below, we affirm the conviction, vacate the sentence and remand the case to the district court for resentencing.

The underlying facts are not disputed. On May 30, 1989, appellee robbed the Princeton State Bank in Pease, Minnesota. He brandished what was later determined to be a BB gun and told the bank teller that "I have no qualms about shooting you." Appellee fled in a car and was arrested a short time later by a state highway patrol officer. The money (about $9,500), the clothes worn by the robber and the gun were found in the car. Appellee was indicted and charged with one count of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d). He agreed to plead guilty. As part of the plea agreement, the parties stipulated that appellee would receive a two-point reduction for acceptance of responsibility, pursuant to Guidelines § 3E1.1, because he confessed and cooperated with the authorities in the investigation. According to the presentence investigation report, appellee's total offense level was 20, his criminal history category was I because he had no prior criminal history, and the applicable guideline sentencing range was 33–41 months.

The district court granted appellee a downward departure and sentenced him to only 24 months imprisonment. The district court explained that its grant of a downward departure was because of appellee's adoptive background. Appellee is bi-racial; he was adopted by a white couple when he was three months old. At the time of the

adoption neither the adoption agency nor his adoptive parents realized that appellee was bi-racial. As noted by the district court, appellee was only 21 years old at the time of the offense and had been a honors student in high school and had successfully completed one year of vocational training. The district court also based its grant of a downward departure in the present case on the disparity between the guideline sentencing range applicable to appellee and the lower guideline sentencing range applicable to the defendant in a bank fraud case also pending before the court.

The government argues forcefully that the district court abused its discretion in granting a downward departure on the basis of appellee's race and family situation. The government argues that under the sentencing guidelines neither race nor family situation are ordinarily relevant in determining whether a sentence should be outside the guidelines. *See* Guidelines §§ 5H1.6 (family ties and responsibilities), 5H1.10 (race, sex, national origin, creed, religion, socio-economic status). Appellee argues that the district court did not rely upon race but instead relied upon his mental and emotional condition. *See* Guidelines § 5H1.3. There is some evidence in the record that indicates that bi-racial children, especially bi-racial adopted children, often experience severe identity crises and that adopted children are in trouble with the authorities more often than children who have not been adopted.

■ Under the sentencing guidelines district courts must impose a sentence within the applicable guideline sentencing range unless "the court finds ... mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a [different] sentence." 18 U.S.C. § 3553(b). "The guidelines materials clearly indicate that departures [from the applicable guideline sentencing range] 'were intended to be quite rare.'" *United States v. Neil*, 903 F.2d 564, 565 (8th Cir.1990), *citing United States v. Justice*, 877 F.2d 664, 666 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct.

375, 107 L.Ed.2d 360 (1989). This circuit follows a three-step test to decide whether a departure from the guidelines is permissible for the reasons stated by the district court. *See, e.g., United States v. Lang,* 898 F.2d 1378, 1379–80 (8th Cir.1990). We must "determine [, first,] whether the mitigating circumstances the district court relied on are of a kind or degree appropriate to justify departure, [next,] whether these circumstances actually exist in this case, and [finally,] whether the degree of departure is reasonable." *United States v. Big Crow,* 898 F.2d 1326, 1331 (8th Cir.1990), *citing United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

## MENTAL AND EMOTIONAL CONDITION

■ Because the district court did not rely upon appellee's mental and emotional condition as a reason for departing from the applicable guideline sentencing range, we will not consider those circumstances as a basis for departure. We note, however, contrary to appellee's argument, that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines." Guidelines § 5H1.3 (noting that mental and emotional conditions, whether mitigating or aggravating, may be relevant in determining the length and condition of probation or supervised release).

## RACE AND FAMILY SITUATION

■ We hold the district court abused its discretion in sentencing appellee outside the applicable guideline sentencing range because he was a bi-racial adopted child. First, in establishing the Sentencing Guidelines, Congress expressly directed the Sentencing Commission to "assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d). This Congressional directive is clearly set forth in Guidelines § 5H1.10. For this reason, appellee's race or racial background cannot be a basis for departure. *See United*

*States v. Diaz–Villafane,* 874 F.2d at 49 n. 5 (guidelines bar departures based on enumerated factors such as race, sex and national origin); *cf. United States v. Natal–Rivera,* 879 F.2d 391, 393 (8th Cir.1989) (guidelines do not violate due process because they do not allow consideration of cultural background when imposing sentence). *But see United States v. Big Crow,* 898 F.2d at 1331–32 (affirming departure because of offender's consistent employment record and efforts to make "decent life in difficult environment" on Pine Ridge Indian Reservation).

■ Similarly, under the guidelines, "family ties … are not ordinarily relevant in determining whether a sentence should be outside the guidelines." Guidelines § 5H1.6. Most courts have refused to depart on the basis of family circumstances on the basis of this guideline policy statement. *See United States v. Neil,* 903 F.2d at 565–66 (close family ties and helping young people not sufficiently unusual); *United States v. Sutherland,* 890 F.2d 1042, 1043 (8th Cir.1989) (per curiam) (no departure despite "unusual family responsibilities"); *United States v. Sailes,* 872 F.2d 735, 739 (6th Cir.1989) (no departure despite status as custodial parent of minor children); *United States v. Weidner,* 703 F.Supp. 1350, 1356 (N.D.Ind.1988) (no departure despite support of spouse and stepchildren), *aff'd mem.,* 885 F.2d 873 (7th Cir.1989); *United States v. Rodriguez,* 691 F.Supp. 1252, 1253 (W.D.Mo.1988) (reference in dicta to another case in which court held it was not unreasonable to consider "special family situation" when both parents of small children faced imprisonment), *aff'd mem.,* 881 F.2d 1080 (8th Cir.1989). *But cf. United States v. Big Crow,* 898 F.2d at 1331–32 (affirming departure based in part upon marriage and support of children in "difficult environment" of Indian reservation). Our initial task is to determine whether departure is justified on the basis of appellee's family situation, that is, his status as an adopted child. The guidelines apparently do not refer to adoptive status. However, adoption, even cross-racial or cross-cultural adoption, although not

common, is not rare or unusual in the United States. For this reason, we do not think an offender's status as an adopted child is so unusual or atypical that the Sentencing Commission did not adequately take such circumstances into consideration in formulating the guidelines.

## SENTENCING DISPARITY

■■■ We further note that the district court should not have relied upon the perceived disparity between the sentencing guideline range applicable to appellee and that applicable to the defendant in another bank case. The sentencing guidelines are intended to reduce disparity between similar individuals convicted of similar offenses. According to the government, the case referred to by the district court involved the offense of making false statements in connection with bank loans, an offense which would not be comparable to appellee's offense of armed bank robbery. *See* Brief for Appellant at 2 n. 2. On remand the district court should not consider this perceived disparity when imposing sentence.

Despite our conclusion that appellee's status as a bi-racial adopted child does not warrant a downward departure, the district court on remand should consider this circumstance, as well as appellee's excellent academic record and other factors, in deciding the sentence to be imposed within the applicable guideline sentencing range. We note that the government has acknowledged that a sentence at the lower end of the applicable guideline sentencing range would be appropriate in the present case.

Accordingly, we affirm the conviction, vacate the sentence and remand the case to the district court for resentencing within the applicable guideline sentencing range.

HEANEY, Senior Circuit Judge, dissenting.

The decision of the experienced Chief Judge of the District of Minnesota to depart downward was not only a wise and prudent one, but it was consistent with the guidelines. The judge made a modest reduction in the term of imprisonment from thirty-three to twenty-four months and recommended that Prestemon receive therapeutic help during this confinement. He additionally imposed a five-year term of supervised release after the term of imprisonment expired, a term longer than required by the guidelines.[1] Certainly the substitution of two additional years of supervised release for nine months of confinement will more than adequately serve the interests of society.

Contrary to the view expressed in the majority opinion, downward departures are not rare. The four largest district courts in this circuit departed downward in eighteen percent of all cases in 1989.[2] Nor does the enabling statute or the guidelines support the view that departures are intended to be rare.[3] Rather, departures are to be made whenever a guidelines sentence does not accurately reflect all the circumstances—here, that certainly is the case.

The defendant was a first offender. He had an excellent academic record and strong parental support. As he grew older, however, he had difficulty coping with the fact that he is part black and his parents are white. The program director of the Children's Home Society summarized the impact of Prestemon's family situation in a letter to the court:

Damon joined the family at three months of age.... [His parents] were told he was of English and Irish descent but he

---

1. The guidelines state that the court must impose a term of supervised release of at least three but not more than five years when the defendant is sentenced to prison for at least one year and has been convicted of a Class A or B felony. U.S.S.G. §§ 5D1.1(a), 5D1.2(b)(1). Prestemon was convicted of violating 18 U.S.C. § 2113(a) and (d), a Class B felony, but that statute does not require the court to impose a term of supervised release.

2. Two-thirds of these downward departures resulted from 5K1.1 motions by the government and one-third were for other reasons.

3. *See* Oberlies, *Reviewing the Sentencing Commission's 1989 Annual Report,* 3 Fed.Sent.R. 152, 153 (1990) (Commission has long recognized that appropriate departures are an essential part of any effectively functioning sentencing system).

very definitely is part Black.... Damon was an ideal son until about two years ago.

... [The parents'] genuine love and acceptance of Damon as a person has made it unimportant to them whether he has this or the other attributes in his appearance. Thereby they have not been fully cognizant of Damon's burden of racial definition he has had to carry alone....

Damon is a good looking young man, very polite and soft spoken, hiding any possible anger under a sweet, gentle veneer. He expressed fear and real terror of personal persecution as an African American, citing threats he had encountered. Mrs. Prestemon had not previously comprehended Damon's fears and had not understood why he was not willing to accept job opportunities offered him in small Iowa towns after graduating from Brown Institute. He graduated in "Broadcasting" from there with a straight 4.0 grade average....

Damon's parents have not been adequately prepared to cope with their son's quite obvious mixed racial descent. They are unable to help, support and offer ideas or coping skills their son would have badly needed during the last few years....

The dynamics of Damons [sic] social/racial bewilderment and his impaired identity quest is a major factor, in my opinion, one that caused him to distance himself from his family, emotionally. They were unable to provide needed guidance in this area of adjustment and growth. There is a good example of "love alone is not enough!"

I am holding forth the strong hope that the Court's order will include therapeutic help for Damon. He needs to work through racial identity confusion and also apparent faulty thought processes based on a possible combination of genetic predisposition.

These facts, not Prestemon's race, moved the judge to impose the sentence that he did. Prestemon's race was important only because it described his status as an adopted child in a "mixed race adoption proceeding[ ]".[4]

In light of these circumstances, I cannot understand how we can substitute our judgment for that of the district judge and say that the circumstances were not so unique as to permit the sentence that the district court imposed. As the Second Circuit has noted,

> it was not Congress' aim to straitjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble, and preventing it from exercising discretion, flexibility and independent judgment.

*United States v. Lara,* 905 F.2d 599, 604 (2d Cir.1990). While family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the guidelines, *see* U.S.S.G. § 5H1.6, they may be relevant in unusual cases. *See, e.g., United States v. Big Crow,* 898 F.2d 1326, 1331–32 (8th Cir. 1990); *United States v. Handy,* 752 F.Supp. 561 (E.D.N.Y.1990). Prestemon's is an unusual case.

The majority suggests that cross-racial or cross-cultural adoption is not "so unusual or atypical that the Sentencing Commission did not adequately take such circumstances into consideration in formulating the guidelines." Information presented to the district court, however, shows that cross-racial adoptions are indeed "unusual or atypical." Less than two percent of children in Minnesota are adopted; of these

---

**4.** Although the guidelines purport to be neutral about race, the fact is that black offenders receive longer sentences under the guidelines than white offenders. In 1989, the average guidelines sentence for black offenders was 70.95 months, while the average guidelines sentence for white offenders was 37.3 months (data collected from the District of Minnesota, Eastern District of Arkansas, Eastern District of Missouri, and the Western District of Missouri, and adjusted to reflect time served).

Nationwide Sentencing Commission data with respect to 18 to 35 year old males sentenced under the guidelines in 1989 reveal that black defendants are receiving longer sentences under the guidelines than white defendants. Black males between 18 and 35 sentenced in 1989 under the guidelines will serve, on the average, about 68.5 months; in contrast, white males between 18 and 35 sentenced in 1989 under the guidelines will serve, on the average, about 44.7 months.

adopted children, only around half are in "special categories";[5] of these "special category" children, only a portion are cross-racial adoptees; and of these cross-racial adoptees, only a portion will have difficulties with the law. As the majority concedes, there is nothing in the guidelines that refers to adoptive status, and the majority has not cited a single case involving adoptive status.

Guideline sentencing is a fact of life, but the guidelines do not require a judge to abandon common sense at sentencing. We should not restrict a sentencing judge's discretion more than the guidelines do.

Just today this court approved an upward adjustment from three years to seven years for credit card fraud. *United States v. Perkins,* 929 F.2d 436 (8th Cir.1991). While I disagreed with the trial court's decision to depart upward, I joined in the majority opinion because it is important to sustain a district court's exercise of discretion. We should sustain that exercise here.

---

5. "Special categories" includes children born in another country, children racially different than their adoptive parents, children older than infants when adopted, children adopted in a group along with their siblings, and children with physical or emotional difficulties.