UNITED STATES of America, Appellee,

v.

**Durrell Levon STANTON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Dion Juan BERRY, Appellant.**

**Nos. 91–3862, 91–3863.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1992.

Decided Sept. 11, 1992.

Joel C. Golden, Minneapolis, Minn., argued, for Durrell Stanton.

Robert Richman, Minneapolis, Minn., argued (Andrew H. Mohring and Sherri Whalen, on the brief), for Dion Berry.

Christopher J. Bebel, Minneapolis, Minn., argued, for U.S.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

WOLLMAN, Circuit Judge.

Dion Juan Berry appeals from his conviction and sentence for conspiracy and possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 846. Durrell Levon Stanton appeals from his conviction and sentence for possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). We affirm.

I.

At approximately 7:00 p.m. on May 6, 1991, Eldridge Lamont Burks was arrested by Minneapolis police for distributing cocaine. Burks agreed to cooperate with the police and provided Officer Chris Hauglid with pager number 649–2008. Shortly after 7:00 p.m., Officer Hauglid dialed this number and entered the number of his own cellular telephone so that the call could be returned. Within minutes, Hauglid's phone rang, and Burks spoke with the party on the other end.

After the phone conversation, Burks told Hauglid that he had ordered two ounces of crack cocaine from "D'Hawg" (Berry) and that Berry had instructed him to call again when he was ready to make the purchase. One-half hour later, Hauglid dialed the pager number and his own number again. Burks answered the incoming call on Hauglid's phone and engaged in another brief conversation. This time, Burks told Hauglid that Berry had told him to travel to north Minneapolis and then place another call to Berry's pager. Burks, accompanied by the officers, did as he was instructed. Berry returned the call and, according to Burks, instructed Burks to travel to a nearby Burger King, where Berry would be waiting in a gray car to effect the transaction. Burks, the police officers, and additional surveillance officers drove to an area south of the Burger King to wait for Berry. A blue Monte Carlo Chevrolet containing three black males entered the Burger King parking lot and proceeded through it very slowly. No one exited the car to purchase any food. After the blue car left the parking lot, an unsolicited call was received on Hauglid's telephone, which Burks answered. According to Burks, Berry asked about Burks' location. Burks responded that he was within several minutes

* The HONORABLE ELSIJANE TRIMBLE ROY, United States Senior District Judge for the Eastern District of Arkansas, sitting by designation.

of the Burger King. Berry and Burks agreed to try the meeting again.

Officer Hauglid and Burks saw the blue Monte Carlo return to the Burger King parking lot and come to a stop. Again, no one exited the car to purchase any food. A phone call was immediately received on Hauglid's telephone. According to Burks, Berry asked about Burks' location and stated that he was in the Burger King parking lot. He told Burks that he would leave the Burger King and meet Burks at a nearby Wendy's restaurant. The officers then saw the Monte Carlo leave the parking lot. Burks told the officers that he believed he had seen "D'Hawg" (Berry) in the back seat.

The officers stopped the blue Monte Carlo thirteen blocks from Burger King, approximately one block from Wendy's.[1] Berry was in the back seat, Stanton behind the steering wheel, and a juvenile in the front passenger seat. The officers removed the three from the car and discovered four bags of cocaine base lying in plain view on the front seat, ten to twelve inches from where Stanton had been sitting. All three passengers were arrested. A search incident to the arrest yielded cash and pagers on both Stanton and Berry. After obtaining a warrant, Hauglid opened the trunk and found additional crack and a handgun.

During questioning by the officers, Berry admitted that the number dialed by Hauglid was his pager number. He then retracted the admission and later retracted the retraction. Berry admitted that he had set up the crack deal with Burks and that he had called Stanton to provide transportation and the crack. Berry also stated that he threw the crack into the front seat when the police stopped the Monte Carlo because he regarded Stanton as the true owner of the crack. Stanton, in contrast, essentially denied all involvement in any criminal activity and all of Berry's assertions.

A jury convicted Berry on two counts, conspiracy and possession with intent to distribute crack. Stanton was convicted on only one count, possession with intent to distribute crack. Based on a criminal history category of IV, an offense level of thirty, and a Guidelines range of 135–168 months, Berry was sentenced to 144 months. Based on a criminal history category of III, an offense level of thirty-four, and a Guidelines range of 185–235 months, Stanton was sentenced to 188 months.

## II.

Berry first argues that the district court[2] failed to state an adequate reason for imposing his sentence, as required by 18 U.S.C. § 3553(c)(1). Specifically, Berry contends that the district court's stated reason for Berry's sentence, a comparison to Stanton's anticipated sentence, is inappropriate.

When the Guidelines range exceeds twenty-four months, the sentencing court must state "the reason for imposing a sentence at a particular point within the range." See 18 U.S.C. § 3553(c)(1); United States v. Dumorney, 949 F.2d 997, 997 (8th Cir.1991). "When a sentencing court fails to comply with this requirement, the sentence is imposed in violation of law and is reviewable on appeal." United States v. Veteto, 920 F.2d 823, 826 (11th Cir.1991) (citation omitted).

"The court's orally imposed sentence ... controls our review of the district court's reason" for Berry's sentence. Dumorney, 949 F.2d at 997. When sentencing Berry, the district court stated:

The guideline range exceeds 24 months and therefore the court is mandated to try to give some reason as to why it chose the number it did within the guideline range.

\* \* \* \* \* \*

I have compared your case to Mr. Stanton's case. I have tried to compare your

---

**1.** According to the officers, they stopped the car before it entered the parking lot to avoid contact with innocent bystanders.

**2.** The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

backgrounds. I have tried to compare your involvement in the offense. You blame him, he blames you. How do I know who is more to blame, you were both to blame.

I have picked somewhat—normally I would pick a half way point in the guidelines, but in your case I have gone a little below the mid-point in an effort to try to, in some manner, compare your sentence to what I feel the guidelines will compel in Mr. Stanton's case. I think I have taken into account your age, and I have taken into account in some measure the fact that I think that the guideline range, in my view, is exceedingly high under the circumstances. And that is the best I can say.

Sent.Trans. at 22–23.

The government argues that although the district court did refer to Stanton, the court nonetheless complied with its obligation under section 3553(c)(1). The court, for example, explained that it had taken into account Berry's background, his involvement in the offense, and his age. The government also contends that the district court is in the best position to impose an appropriate sentence. *United States v. Lang,* 898 F.2d 1378, 1380 (8th Cir.1990) ("District courts are in the front lines, sentencing flesh-and-blood defendants.").

Berry contends, however, that the Guidelines contemplate sentencing a defendant on the basis of his own conduct, U.S.S.G. § 1B1.4, and that reference to Stanton's anticipated sentence is inappropriate, citing *United States v. Prestemon,* 929 F.2d 1275, 1278 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 220, 116 L.Ed.2d 178 (1991).

The Guidelines state that among other factors to be considered during sentencing, the sentencing court "shall consider ... the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Recognizing this principle, the *Prestemon* court stated that "[t]he sen-

tencing guidelines are intended to reduce disparity between similar individuals convicted of similar offenses." 929 F.2d at 1278. Berry's contention, that it is error for a sentencing court to refer to anyone other than the defendant, finds no support in the Guidelines. It is true that the *Prestemon* court remanded that case for resentencing. It did so, however, because the case to which the sentencing court referred involved an offense that was not similar. *See id.* (making false statements in connection with bank loan vs. bank robbery).

Here, in contrast, the district court compared the involvement of Berry and Stanton in the same drug transaction. As stated above, the district court also considered Berry's background, involvement in the offense, and age. *See United States v. Jones,* 965 F.2d 1507, 1519 (8th Cir.1992) (upholding district court's statement of reasons for the sentence). Thus, we conclude that the district court adequately explained its reasons for the imposition of Berry's sentence.[3]

### III.

Stanton contends that the items found in the Monte Carlo and statements he made should have been suppressed because the police lacked probable cause to stop the vehicle. Chief among Stanton's arguments is that Burks was an unreliable informant.

Without recounting the facts set forth above concerning the several telephone conversations between Burks and Berry and the officers' opportunity to listen to Burks' side of those conversations and to observe the Monte Carlo automobile, those facts, when taken together, established that Burks was in contact with someone in the blue Monte Carlo and that the discussions with that person centered around the purchase of two ounces of crack cocaine.

---

**3.** Berry's second argument, that the sentencing commission failed to adequately consider the impact of mandatory minimum sentences on Guidelines sentences, was rejected by this court in *United States v. Lattimore,* 974 F.2d 971 (8th Cir.1992). Berry's third and final argument, that the district court improperly denied his motion to sever, is entirely without merit.

Accordingly, the district court did not err in concluding that the information available to the officers was "sufficient to warrant a prudent man in believing that the [occupants of the car] ... [were] committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The information was specific and described ongoing activity, in contrast to the inchoate, unparticularized information that we held to be insufficient to justify a *Terry* stop in *Thompson v. Reuting*, 968 F.2d 756 (8th Cir.1992). Also, while Burks may not be a model citizen, the circumstances surrounding the telephone conversations and the appearances of the blue Monte Carlo adequately corroborated the reliability of the information that he provided to the police in this instance. *See Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

Stanton next contends that he was prejudiced by the failure of the government to disclose Burks' address and whereabouts prior to the suppression hearing.

The government responds that it agreed to provide this information, but that Burks was elusive and unavailable. Until the district court issued a bench warrant and the U.S. Marshals Service found and arrested Burks, his whereabouts were unknown. Moreover, the government points out that Stanton had the opportunity to question Burks before the jury after Burks became available. Finally, the government contends that there is no rule requiring the government to communicate the identity of an informant to a defendant at the suppression hearing stage of a case. *United States v. Bourbon*, 819 F.2d 856, 859 (8th Cir.1987).

Stanton does not contend that Burks was available or that the government acted in bad faith by not producing him. Moreover,

the Supreme Court has "[n]ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." *Id.* (citing *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1986)). We therefore reject Stanton's argument.[4]

Stanton's and Berry's remaining arguments are rejected as being without merit.

The convictions and sentences are affirmed.

---

**4.** Stanton's third argument, that the sentencing guidelines' treatment of crack (as contrasted with cocaine powder) is unconstitutional because black persons are more likely to use crack, has been rejected by this court. *See, e.g., United States v. Simmons*, 964 F.2d 763 (8th Cir.1992), and cases cited therein. Stanton's fourth argument, that the weight of the cocaine base is an essential element of the offense, is without merit. *United States v. Luster*, 896 F.2d

1122, 1126 (8th Cir.1990) (weight of drugs is relevant only for purposes of sentencing). Stanton's fifth argument, that the jury verdict was inconsistent, is rejected. "[V]erdicts cannot be upset by speculation[.]" *Dunn v. United States*, 284 U.S. 390, 394, 52 S.Ct. 189, 191, 76 L.Ed. 356 (1932). Finally, Stanton's argument regarding the unavailability of the juvenile is meritless. Stanton waived his right to have the juvenile present.