# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3129

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Kevin Decora, also known as Hoch | * | |
| Decora, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  March 12, 1999

Filed:  May 20 , 1999

_____

Before BEAM and HEANEY, Circuit Judges, and FENNER,[1] District Judge.

_____

HEANEY, Circuit Judge.

In this criminal sentencing appeal, the government challenges the district court's downward departure.  Because the district court's decision to depart downward was well within the discretion afforded it by the sentencing guidelines, we affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

# I.

Kevin Decora was charged with assault with a deadly weapon and pled guilty. At sentencing, the district court departed downward from a guidelines range of 37-46 months and sentenced Decora to three years probation. At the time of the assault, Decora was a 22-year-old resident of Mission, South Dakota, a town on the Rosebud Sioux Tribal Reservation in South Dakota. He had lived on the reservation for a number of years. Decora graduated from the county high school in Mission and attended Sinte Gleska University. At the time of sentencing, Decora had earned his associate degree in mental health, and had one semester left to obtain his bachelor's degree. Decora had been, and continues to be, extensively involved in community and extracurricular activities such as the Human Services Club and the Lakota Club, the latter of which he served in as president. Since graduating from high school, Decora has been employed every summer.

On the evening of November 13 and the early morning hours of November 14, 1997, Decora had been drinking. On his way home, Decora passed off-duty Mission police officer Jon Siedschlaw in a no-passing zone. Siedschlaw observed Decora exceeding the posted speed limit and failing to stop for a stop sign. Siedschlaw radioed on-duty Officer Tucker with a description of the vehicle, and both officers followed Decora to his mother's home in Mission. Decora exited his vehicle and approached the officers. He initially placed his hands on the car as requested by the officers, but then removed his hands. The officers then restrained Decora, placed him in handcuffs, and seated him in the back of the patrol vehicle. While Decora was in the back of the vehicle, he kicked Siedschlaw, who was in the front of the vehicle, in the head. Later, as he was removed from the patrol car, Decora kicked Siedschlaw in the groin area.

On November 19, Decora was charged with assault with a dangerous weapon (shod feet). He pled guilty to the indictment on April 27, 1998 and was sentenced on July 20, 1998. The Pre-Sentence Report (PSR) indicated a total offense level of 21.

At the time of sentencing, Decora had three prior tribal DUI convictions as a juvenile in Rosebud, South Dakota, which did not have any impact on sentencing. His criminal history score was zero. The district court departed downward from the recommended sentence of 37-46 months for a level 21 offense with a criminal history of I and placed Decora on probation for three years. As a term of his probation, Decora was required to participate in a substance abuse treatment program including testing for drugs and alcohol.

## II.

The sole issue on appeal is whether Senior District Judge Andrew Bogue, a judge with almost thirty years experience on the bench, abused his discretion in granting Decora the downward departure. See Koon v. United States, 518 U.S. 81, 97-100 (1996) (directing appellate courts to apply an abuse-of-discretion standard in reviewing a district court's decision to depart downward). The sentencing court may depart downward if the court finds that there exists a mitigating circumstance of a kind or degree not adequately taken into consideration in formulating the guidelines. See U.S.S.G. § 5K2.0. "The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis." Id.

In making his decision to depart, Judge Bogue stated that the facts and the circumstances of the case took it out of the heartland of the assault with dangerous weapon cases that he usually saw in his courtroom. He continued that because the case was so far removed from the ordinary assault with a dangerous weapon case, he was inclined to describe Decora's behavior as aberrant–seemingly random and thoughtless, done without any planning, almost reflexively. (Sentencing Tr. at 10.) Judge Bogue noted that prior to the incident Decora had never committed such an act of violence, nor has he since.

Additionally, Judge Bogue found that there were unusual mitigating circumstances in the case, namely, the adversity defendant Decora had faced on the reservation and the "remarkable resilience" he had nonetheless shown in his determination to succeed. (Sentencing Tr. at 10.) At the time of the incident, Decora was only one semester away from receiving a college degree. Many of Decora's teachers and colleagues sent letters to Judge Bogue indicating that Decora is well respected in his community and at the University and that he shows great promise as a community leader and a role model. Judge Bogue concluded, "This young man shows a great deal of promise in an otherwise dismal and despairing situation. A term of incarceration would ruin his life and no good purpose would be served thereby." (Sentencing Tr. at 11.)

The sentencing guidelines provide that factors such as education and vocational skills, employment record, and family and community responsibility and ties are not *ordinarily* relevant in determining whether a sentence should be outside the applicable guidelines range. See U.S.S.G. §§ 5H1.2, 5H1.5, 5H1.7. However, U.S.S.G. §5K2.0 provides in relevant part:

> [A]n offender characteristic or other circumstance that is, in the Commission's view, "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines.

U.S.S.G. §5K2.0. At sentencing, Judge Bogue acknowledged that the mitigating circumstances he identified about Decora would not ordinarily be relevant, but that he believed they were present in this case to a degree that affected sentencing in a way not adequately taken into consideration by the Sentencing Commission.

Although the sentencing guidelines are designed to achieve uniformity in federal sentencing, they also preserve for the judge the discretion to depart. See Mistretta v. United States, 488 U.S. 361, 367 (1989). Justice Breyer, the architect of the guidelines, recently stated that the guidelines have preserved the district court's traditional sentencing discretion by allowing it to depart from the guidelines in unusual cases. Associate Justice Steven Breyer, Address at the University of Nebraska College of Law, Symposium on the Federal Criminal Sentencing Guidelines (Nov. 18, 1998). Justice Breyer stressed the importance of the discretionary authority of the sentencing judge in promoting fairness and equity in the individual case. Id.

In Koon, the Supreme Court stressed that,

A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court . . . . Whether a given factor is present to a degree not adequately considered by the commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District Courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

518 U.S. at 98 (citation omitted). Here, Judge Bogue has spent thirty years in just this institutionally advantageous position, having seen numerous defendants in assault with a dangerous weapon cases, as well as numerous defendants who had been raised on the reservation. This experience guided Judge Bogue in his determination that "the facts and circumstances of this case take it outside of the heartland of the assault with a dangerous weapon cases that I normally see in my courtroom." (Sentencing Tr. 9.)

Judge Bogue further stated that he was "well aware of the adversity that a young man in [Decora's] position faces on the reservation." (Sentencing Tr. at 10.) Judge

Bogue's knowledge of the adversities of life on the reservation enabled him to make the judgment that factors not ordinarily relevant, such as education, work experience, and leadership in the community, were present to an unusual degree which distinguished Decora's case. This determination is expressly provided for in the guidelines. See U.S.S.G. § 5K2.0 comment. ("The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.").

Finally, Judge Bogue was also guided by our decision in United States v. One Star, 9 F.3d 60 (8th Cir. 1993), which is factually very similar to the instant case and supports his exercise of discretion. The defendant in One Star was convicted of assault with a dangerous weapon. See id. at 60. The PSR recommended a base offense level of 20 with a guideline range of 33-41 months imprisonment. See id. at 60-61. The district court granted a downward departure and sentenced One Star to five years probation conditioned upon, among other things, participation in a substance abuse program. See id. at 61. The district court based its departure upon its finding that One Star had only one prior assault conviction and no other history of injuring or threatening others, thus he did not appear to be dangerous because any proclivity to violence was sufficiently addressed by the no alcohol condition of his probation. See id. The court also considered the fact that One Star possessed the weapon for self-defense and that he had strong family ties and responsibilities and a good employment history. See id.

The district court considered these factors in light of the unusual mitigating circumstances of life on the Indian reservation. See id.; see also United States v. Big Crow, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (describing the mitigating factors present on an Indian reservation). As in One Star, here it is the combination of the difficulty of life on the reservation and the extraordinary and unusual nature of Decora's

educational record and community leadership that allows for the departure. Cf. United States v. Weise, 89 F.3d 502, 506 (8th Cir. 1996) (departure not warranted where, aside from reservation life, the defendant's work record and family relationships were not otherwise unusual enough to warrant departure); United States v. White Buffalo, 10 F.3d 575, 577 (8th Cir. 1993) (departure not warranted where defendant presented no evidence of his standing in the community and his work record was not sufficiently unusual); United States v. Prestemon, 929 F.2d 1275, 1278 (8th Cir. 1991) (departure based on defendant's status as bi-racial adoptee prohibited). The district court also considered the fact that while released on bond, Decora successfully completed an intensive in-patient treatment program, participated in an alcohol after-care program following his treatment, and attended Alcoholics Anonymous meetings. See Sentencing Tr. at 7-8; see also, United States v. Allery, No. 98-2644, slip op. at 5 (8th Cir. April 15, 1999) (noting that post-offense rehabilitation may, if it is sufficiently unusual, furnish grounds for a downward departure) (citing United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997)).

The government argues that even if a downward departure is warranted, the departure to probation is excessive. We disagree. In One Star, this court affirmed the district court's downward departure to probation as a reasonable exercise of discretion under the guidelines, noting that the decision to impose probation "'is quintessentially a judgment call.'" 9 F.3d at 62 (quoting United States v. Passmore, 984 F.2d 933, 937 (8th Cir. 1993)). Judge Bogue, in consideration of all of the circumstances in Decora's case, made just this quintessential judgment call and permissibly imposed probation.

## III.

We conclude that Judge Bogue's decision to depart downward and sentence Decora to three years probation was within the discretion retained by the sentencing court under the structure of the sentencing guidelines and supported by our case law. Therefore, the judgment of the district court is affirmed.

FENNER, District Judge, dissenting.

I believe the district court erred by taking into consideration the defendant's racial background when imposing sentence. In *United States v. Prestemon*, 929 F.2d 1275 (8th Cir. 1991), this Court noted:

> [I]n establishing the Sentencing Guidelines, Congress expressly directed the Sentencing Commission to "assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d). This Congressional directive is clearly set forth in Guidelines § 5H1.10. For this reason, appellee's race or racial background cannot be a basis for departure. *See United States v. Diaz-Villafane*, 874 F.2d at 49 n. 5 (guidelines bar departures based on enumerated factors such as race, sex and national origin); *cf. United States v. Natal-Rivera*, 879 F.2d 391, 393 (8th Cir. 1989) (guidelines do not violate due process because they do not allow consideration of cultural background when imposing sentence).

As reflected in the majority opinion, the sentencing judge in the present case made it clear that he was basing his decision to depart from the sentencing guidelines on his personal knowledge of the general adversities one faces living on a reservation. By considering, in a general sense, that a person was raised or lives on a reservation, raised or lives in the ghetto, or otherwise from a particular socioeconomic status, is to take into consideration that which is specifically prohibited by Congress. I would remand for the district court to resentence defendant without reliance on a generalization of adversities of life on the reservation.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.