**UNITED STATES of America,**

v.

**Brian HANCOCK, Defendant.**

**No. CRIM.A. 97–664.**

United States District Court,
E.D. Pennsylvania.

May 5, 2000.

---

**3.** These requests were not raised at the sentencing hearing.

Patrick C. Askin, Philadelphia, PA, for Plaintiff.

Eric A. Voss, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

KATZ, Senior District Judge.

On April 27, 1998, defendant Brian Hancock pled guilty before this court to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Now before the court is Hancock's motion for a downward departure. Upon consideration of the submissions of the parties, and after a sentencing hearing, the court, ruling from the bench, granted the motion on the following independent grounds: the case falls outside of the heartland, the defendant's conduct was aberrant, and the totality of the circumstances warrants a departure. The court departed from an applicable sentencing range of 18 to 24 months imprisonment to five years of probation with a condition of six months community confinement with work release. The court now writes to supplement that ruling.

### I. Facts

On the night of May 31, 1997, Hancock, dressed in a T-shirt and shorts, was on his way to play basketball when he saw a handgun lying in the street. Unsure whether the gun was real, he picked it up and fired it a couple of times into the ground. Although Hancock realized after the first shot that the gun was not a toy, he fired it once more, hoping to empty the weapon of ammunition before disposing of it. There was only a short interval between the two shots. Two plainclothes Philadelphia police officers driving an unmarked car responded to the sound of the first gunshot and saw Hancock standing in the street holding the handgun. They saw him fire a second shot into the ground in the direction of some unoccupied cars and discard the weapon in a trash can. The police recovered the gun, a Raven .25 caliber semi-automatic with an obliterated serial number, and arrested Hancock. The

gun was still loaded with four rounds of ammunition.

Hancock was charged with a violation of 18 U.S.C. § 922(g)(1), possession of a handgun by a convicted felon. His prior felony conviction stemmed from his involvement in a scheme to purchase firearms as a "straw man" while he was attending Wilberforce College in Ohio. Hancock was recruited for this scheme by his college basketball teammates. Of the over 500 weapons that were illegally obtained, Hancock personally purchased 117. He pled guilty in the Southern District of Ohio to one count of conspiracy to make false and fictitious written statements in the acquisition of firearms. Although the applicable sentencing range was 18 to 24 months, the court departed from due to Hancock's substantial assistance to the government and imposed a sentence of three years probation and 150 hours of community service. Hancock was still on probation at the time he committed the instant offense, and his probation was modified to include a term of sixty days confinement in a halfway house after his arrest.

The defendant attempted to cooperate with various law enforcement agencies after his arrest on the instant charge. Although he had no direct knowledge of other criminal activity, officials hoped that he would be able to provide useful information or other assistance because he lived in a neighborhood known to have a high level of crime. His sentencing was continued several times in order to allow Hancock an opportunity to cooperate with the government. For two years, Hancock was registered as a potential confidential informant; at one point, it was proposed that he attempt to purchase drugs in nightclubs where illicit drug sales were suspected to occur. In the end, however, the government determined that his background was such that Hancock could not adopt a convincing criminal persona that would render him useful as an informant.

Hancock received a Bachelor of Arts degree in Political Science from Wilberforce. After graduation, he worked as a bank branch representative and as a youth development worker. Following a term of unemployment which began after his arrest for the instant offense, he found work at the Elwyn Institute, an organization that assists the mentally handicapped. He began at Elwyn as a case manager and, in that capacity, helped handicapped individuals seek and maintain employment. Hancock was then promoted to his current position as Divisional Manager of Community Integrated Employment.

II. Discussion

Hancock originally raised four grounds for departure: that the facts of this case take it outside of the heartland; that he has exhibited extraordinary post-offense rehabilitation; that his acceptance of responsibility was exceptional; and that, given the totality of the circumstances, a departure is warranted. After the court requested that the parties submit supplemental memoranda on the question of whether the defendant's conduct constituted aberrant behavior, *see* Order of Apr. 14, 2000, the defendant raised three additional grounds for departure: that his conduct was aberrant; that his actions constituted a lesser harm within the meaning of U.S.S.G. § 5K2.11; and that the court should adjust the sentence in order to credit the sixty days that he served in a halfway house due to the modification of his Ohio probation.

A. General Standards for Departure

A court may depart downward from the applicable guideline range if it finds "a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. A court must first determine whether the departure factor is forbidden, discouraged, or unmentioned by the Guidelines. *See*

*Koon v. United States,* 518 U.S. 81, 94–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Iannone,* 184 F.3d 214, 226–27 (3d Cir.1999) (detailing 5K2.0 departure analysis to be employed after *Koon* ); *United States v. Sally,* 116 F.3d 76, 80 (3d Cir.1997) (same). If the factor is forbidden, the court cannot use it as a basis for departure.[1] *See Koon,* 518 U.S. at 93, 116 S.Ct. 2035. If the factor is encouraged and not already taken into account by the applicable guideline, the court may depart on that basis. *See id.* at 96, 116 S.Ct. 2035. If the factor is discouraged,[2] encouraged but already taken into the account by the applicable guideline, or listed as an appropriate consideration in applying an adjustment, a court can depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. If the factor is unmentioned, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole ... decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." *Iannone,* 184 F.3d at 226–27 (citation, punctuation omitted); *see also Koon,* 518 U.S. at 96, 116 S.Ct. 2035. Departures based on an unmentioned factor should be awarded very infrequently. *See Koon,* 518 U.S. at 96, 116 S.Ct. 2035; *Iannone,* 184 F.3d at 227.

### B. Bases for Departure

### 1. Circumstances Removing the Case from the Heartland and Lesser Harm

■ Hancock argues that his offense conduct takes the case out of the heartland contemplated by the Guidelines. Specifically, he contends that the circumstances that led to his possession of the firearm and the extremely short time in which he possessed the firearm are atypical of most felon in possession cases. As he conceded at the sentencing hearing, his argument that his conduct did " 'not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue[,]' " Def.Supp.Mem. at 4 (quoting U.S.S.G. § 5K2.11), is a variation of his argument regarding atypical conduct. *See United States v. Mason,* 90 F.Supp.2d 1, 2 (D.D.C. 1999) (granting departure, in part, under section 5K2.11 because circumstances surrounding defendant's possession of a firearm were atypical of the ordinary felon in possession case).

The Guidelines recognize that a departure may be appropriate "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm." U.S.S.G. ch. 1, pt. A intro., cmt. 4(b); *see also Iannone,* 184 F.3d at 227–28 (affirming district court's upward departure based on defendant's conduct that took the case out of the heartland of ordinary fraud cases); *United States v. Decora,* 177 F.3d 676, 677 (8th Cir.1999) (affirming district court's downward departure based, in part, on the atypical nature of the defendant's offense conduct); *United States v. Threadgill,* 172 F.3d 357, 377 (5th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 172, 145 L.Ed.2d 146 (1999) (finding that atypical offense conduct is a permissible basis for departure). The Guidelines do not mention the factors

---

**1.** The factors that can never be used as a basis for departure are race, sex, national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. *See Koon,* 518 U.S. at 93, 116 S.Ct. 2035; *see also* U.S.S.G. §§ 5H1.4, 5H1.10, 5H1.12.

**2.** The discouraged factors are age; education and vocational skills; mental and emotional conditions; physical condition or appearance; employment record; family and community ties and responsibilities; military, civic, charitable or public service, employment-related contributions, and similar good works; and subjection to coercion or duress. *See* U.S.S.G. §§ 5H1.1–1.6, 5H1.11, 5K2.12; *see also Iannone,* 184 F.3d at 227 n. 10 (listing discouraged factors).

relied upon by the defendant, and, therefore, a departure is warranted only if, after considering the structure and theory of both the individual guideline and the Guidelines as a whole, the court finds that these factors take the case out of the heartland. *See Iannone*, 184 F.3d at 227–28.

In considering a departure for a defendant convicted for possession of a weapon by a felon, a close examination of the particular facts and circumstances of each case is necessary. *Cf. Sally*, 116 F.3d at 81 (noting that departure determinations are to be made "on a case-by-case basis, relying on the particular facts and circumstances of each case"). For example, in *United States v. Clark*, 128 F.3d 122 (2d Cir.1997), the Second Circuit remanded a case for resentencing due to a district court's refusal to consider a departure under a lesser harm theory. Like Hancock, the *Clark* defendant pled guilty to unlawful possession of a firearm by a felon and was still on parole for an earlier attempted burglary conviction. According to the defendant, he had purchased the firearm as a gift for his brother; after deciding the first gun would not be suitable for hunting, he purchased a second weapon, planning to return the first. *See id.* at 123. In remanding, the Second Circuit emphasized that the applicability of such a departure depended on the district court's determination of the facts surrounding the purchases, including whether the court credited the defendant's claim that the weapons were purchased as a gift; whether the defendant planned to retain the weapons for only a brief time before returning one and delivering the other to his brother; and whether, in the meantime, the weapons were readily accessible to the defendant. *See id.* at 124. A case decided by a D.C. district court, *United States v. Mason*, also turned on a close consideration of the particular facts surrounding the defendant's possession of a firearm. In that case, the defendant found a gun on the ground one day while at his job as a deliveryman. *See* 90 F.Supp.2d at 2. He

"retrieved the pistol to assure that it would not endanger anyone, ... intend[ing] to turn it in to a police officer he knew at his next delivery destination[.]" *Id.* However, Mason was discovered with the gun before he could surrender the weapon as planned. In departing from a range of 92 to 115 months imprisonment to a range of 77 to 96 months imprisonment, in part under a lesser harm theory, the court found that the facts surrounding the case were atypical of the normal felon in possession case. *See id.* at 2, 3.

Hancock's conduct regarding the instant offense is well outside the norm of the ordinary felon in possession of a firearm case. The court finds Hancock's testimony at the sentencing hearing regarding the circumstances that led to his discovery and possession of the weapon credible. He happened upon the weapon by chance, possessed it for a very short period of time for the purpose of disposing of it, and, once he realized that his attempt to unload the weapon by firing it was ill-advised, he discarded the weapon immediately. As Hancock argues, such behavior is atypical of the ordinary violation of 18 U.S.C. § 922(g)(1) in which a defendant has concealed the weapon on his or her person or has used the weapon to commit another offense. *See e.g., United States v. Brown*, 159 F.3d 147, 149 (3d Cir.1998), *cert. denied*, 525 U.S. 1184, 119 S.Ct. 1127, 143 L.Ed.2d 120 (1999) (*Terry* stop and frisk by police revealed that the defendant was carrying a sawed-off shotgun on his person); *United States v. Bishop*, 66 F.3d 569, 571 (3d Cir.1995) (defendant charged with, *inter alia*, a violation of 18 U.S.C. § 922(g) after using a firearm in a carjacking); *United States v. Jacobs*, 44 F.3d 1219, 1220 (3d Cir.1995) (defendant pulled gun on undercover officer during a drug sale). Because of the atypicality of the conduct, the court will grant a departure on these theories.

### 2. Aberrant Conduct

The court also departs because of the aberrant nature of the offense conduct.

The Sentencing Commission has acknowledged that "it has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. ch. 1, pt. A intro. cmt. 4(d). The Third Circuit has found that aberrant behavior is a factor unmentioned by the Guidelines, *see United States v. Paster*, 173 F.3d 206, 214 (3d Cir.1999), and therefore the court may depart on this basis.

■ "Aberrant behavior must involve a lack of planning; it must be a single act that is spontaneous and thoughtless, and no consideration is given to whether the defendant is a first time offender." *United States v. Marcello*, 13 F.3d 752, 761 (3d Cir.1994); *see also Paster*, 173 F.3d at 213–14 (reaffirming the *Marcello* "spontaneous and thoughtless" definition of aberrant behavior after *Koon* and finding that aberrant behavior is a factor that is unmentioned by the Sentencing Guidelines).[3]

■ Hancock's actions were reflexive and utterly without pre-planning. Happening across a weapon lying in the street in front of his home, he spontaneously and thoughtlessly picked it up. The court recognizes that the Third Circuit narrowly defined aberrant behavior as involving acts committed without prior thought and that Hancock's situation presents a close case. *See Paster*, 173 F.3d at 213–15. For example, in *Paster*, shortly after the defendant learned that his wife had engaged in numerous affairs during their marriage and planned to continue her current affair, he took a knife from the kitchen, walked upstairs, and stabbed his wife multiple times as she emerged from the shower. *See* 173 F.3d at 209. The Third Circuit held that the district court did not err in finding a lack of aberrant behavior because the defendant " 'had ample time in the minutes preceding the stabbing to think about whether to murder his wife,' and that 'the number of times Paster stabbed his wife indicates that he thought about the act as it was being done.' " *Id.* at 213 (quoting *United States v. Paster*, 17 F.Supp.2d 345, 351 (M.D.Pa.1998)). In contrast to Paster, who had time between picking up the knife and stabbing his wife to contemplate his illegal act, Hancock committed his crime, possession of a firearm, as soon as he picked up the weapon from the ground. The court finds that he acted spontaneously and without prior thought when he took possession of the weapon, and therefore Hancock's conduct was aberrational.

The government argues that Hancock actually engaged in several acts and that *Paster*, which requires a single act of aberrant behavior, does not apply. Specifically, the government breaks down Hancock's conduct into possessing the firearm, discharging the firearm several times, and discarding the firearm. However, once Hancock, a convicted felon, picked up from the ground a gun that was manufactured outside the Commonwealth, he violated 18 U.S.C. § 922(g). Hancock's actions after he possessed the gun are simply not material to the question of whether he violated the felon in possession statute. Even un-

---

**3.** *See also, e.g., United States v. Dyce*, 91 F.3d 1462, 1470 (D.C.Cir.1996) (utilizing the spontaneous and thoughtless definition); *United States v. Withrow*, 85 F.3d 527, 530–31 (11th Cir.1996) (same; also requiring that the defendant be a first-time offender); *United States v. Garlich*, 951 F.2d 161, 164 (8th Cir. 1991) (utilizing the spontaneous and thoughtless definition); *United States v. Glick*, 946 F.2d 335, 338 (4th Cir.1991) (same); *United States v. Carey*, 895 F.2d 318, 324–25 (7th Cir.1990) (same; also implying that the defendant should be a first-time offender).

Other circuits have adopted a "totality of the circumstances" definition of aberrant behavior, which examines whether the offense conduct is "a short-lived departure from an otherwise law-aiding life." *Paster*, 173 F.3d at 222 (Cowen, J. concurring in part, dissenting in part) (citations and punctuation omitted); *see also, e.g., Zecevic v. United States Parole Comm'n*, 163 F.3d 731, 734–35 (2d Cir.1998) (applying totality of circumstances); *United States v. Jones*, 158 F.3d 492, 500 (10th Cir.1998) (same); *United States v. Grandmaison*, 77 F.3d 555, 563–64 (1st Cir. 1996) (same); *United States v. Takai*, 941 F.2d 738, 743 (9th Cir.1991) (same).

der the government's logic, therefore, Hancock committed a single act.

### 3. Post–Offense Rehabilitation

■■■ The court will not grant a downward departure solely for post-offense rehabilitation. Instances of extraordinary or exceptional post-offense and post-conviction rehabilitation may provide the bases for a departure to allow "truly repentant defendants to earn reductions in their sentences based upon a demonstrated commitment to repair and rebuild their lives." *Sally,* 116 F.3d at 81. Where the defendant's post-offense conduct is consistent with his pre-offense behavior, however, a downward departure for rehabilitation is not usually warranted. *See United States v. Jaramillo,* 4 F.Supp.2d 341, 351–52 (D.N.J.1998) (declining to depart downward based on defendant's excellent prison record, which included job-training, adult education coursework, and tutoring other inmates, where his behavior was consistent with his pre-incarceration work experience and educational attainment). Hancock's post-offense conduct, not only in finding employment and earning a promotion, but in working with disadvantaged members of society, is noteworthy. However, in light of the defendant's education and work history, his post-offense conduct demonstrates his desire to continue to be a productive member of society, rather than a concerted effort to turn away from a destructive path. As such, Hancock does not qualify for a departure based on rehabilitation.

The defendant argues that denying a departure based on post-offense rehabilitation because he was relatively successful in life before his arrest on the instant offense creates the anomalous situation whereby he is, in effect, being punished for his achievements. While the court recognizes the irony inherent in denying Hancock a departure based on rehabilitation due to his pre-offense successes, such a departure, by definition, requires that a defendant has made "real gains in rehabilitating

himself and changing his behavior." *Sally,* 116 F.3d at 82l; *see also United States v. Kane,* 88 F.Supp.2d 408, 411–13 (E.D.Pa. 2000) (granting *Sally* departure for defendant with extensive criminal history and long-standing addiction because of defendant's successful drug treatment and break from previous lifestyle and behavior).

### 4. Acceptance of Responsibility

■■■ The court finds no independent basis for a departure due to Hancock's acceptance of responsibility. The Sentencing Guidelines provide that a court may depart downward as many as three offense levels due to a defendant's acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Where a defendant's acceptance of responsibility is "substantially in excess of that ordinarily present" a court may depart further. *See United States v. Lieberman,* 971 F.2d 989, 996 (3d Cir.1992). Extraordinary acceptance of responsibility may manifest itself in actions that atone for past misconduct or which provide exceptional assistance to authorities. For example, in *Lieberman,* the Third Circuit affirmed the district court's departure based on the defendant's immediate admission of wrongdoing, his repayment to the bank of an amount in excess of that which he admitted embezzling in his plea agreement, and his assistance to bank officials in explaining how they could detect improper transactions in the future. *See id.* at 994–96. In *United States v. Evans,* 49 F.3d 109, 115 (3d Cir.1995), the court remanded the case for re-sentencing, noting that the defendant might have colorable claim for a departure due to extraordinary acceptance of responsibility based on his voluntary admission of his true identity; prior to this revelation, the authorities were unaware of the defendant's criminal history and that he was wanted as a fugitive in another state. *See id.*

■■■ While Hancock's immediate admission of wrongdoing and desire to make amends by providing assistance to the gov-

ernment certainly deserve the three-level reduction in his offense level awarded by the Probation Office, there is no basis for a further departure. The court credits the defendant's representations that his attempts to assist the government were not based solely on his hope that he would obtain a substantial assistance departure, but also on his desire to atone for his misconduct. However, as the defendant concedes, the government has little or no basis for filing a substantial assistance motion,[4] see Def.Sent.Memo. at 18, and on the facts of this case, the court is unwilling to grant a departure in recognition of the defendant's attempts to assist the government. While the court also finds that Hancock is remorseful for his actions, this remorse is not so extraordinary to justify a departure for acceptance of responsibility.

### 5. Totality of the Circumstances

 As an alternative to the two bases for departure already described, the court finds that the atypical nature of the offense conduct, the aberrational nature of Hancock's actions, his employment at Elwyn, and his remorse and desire to atone for his conduct warrant a departure when considered as a whole, even if they do not do so individually. Circumstances or factors that do not warrant a departure when viewed in isolation may, in combination, prove to be so exceptional as to provide a basis for departure. See U.S.S.G. § 5K2.0, cmt.; see also Evans, 49 F.3d at 114 (recognizing that a combination of factors may provide grounds for a departure). The court finds instructive two cases in the Eighth Circuit that granted departures based on a combination of circumstances comparable to that presented by the instance case. In United States v. One Star, 9 F.3d 60 (8th Cir.1993), the defendant was also charged with possession of a firearm by a convicted felon. The Eight Circuit affirmed the district court's departure from the applicable guideline range of 33 to 41 months imprisonment to five years probation. The district court found that the following mitigating factors, when considered in combination, were not adequately taken into consideration by the Sentencing Guidelines: the defendant was not dangerous; the defendant possessed the firearm for self-defense; the defendant, who was the sole means of support for nine of his relatives, had strong family ties and responsibilities; and the defendant's employment record was good. See id. at 61. In Decora, the defendant's conviction of assault with a deadly weapon stemmed from an incident in which the defendant twice kicked an officer during an arrest for traffic violations.[5] The Eighth Circuit affirmed the district court's departure from the applicable sentencing range of 37 to 46 months imprisonment to three years of probation. This departure was based upon the combination of the atypical nature of the offense conduct which took the case out of the heartland, the defendant's educational achievements, his remarkable resilience in overcoming the adversity of life on the reservation, his leadership in the community, and his post-offense participation in an intensive alcohol treatment program. See 177 F.3d at 677–79.[6]

---

4. The court again notes that it is ironic that the defendant's attempts to stay clear of criminal elements foreclosed the possibility of a substantial assistance departure: Hancock was unable to provide substantial assistance to the government because he had no criminal associates or direct knowledge of criminal activity, and his background made it difficult for him to adopt a "criminal" identity.

5. The deadly weapon was shod feet. See Decora, 177 F.3d at 677.

6. Cf. United States v. Weise, 89 F.3d 502, 506 (8th Cir.1996) (remanding because record was insufficiently developed regarding whether defendant overcame hardship stemming from his life on the reservation, and the defendant's work record and family ties were not otherwise remarkable); United States v. White Buffalo, 10 F.3d 575, 577 (8th Cir. 1993) (holding district erred in granting 5K2.0 departure where defendant presented no evidence of his standing in the community,

Similarly, when considered in combination, the atypical nature of the instant offense conduct, in which Hancock possessed the gun for a short time in order to dispose of the weapon; the spontaneous and thoughtless nature of his conduct; his steady employment in a job that provides assistance to the disadvantaged; and his contrition as manifested by his persistent efforts to assist law enforcement officials, provide a basis for departure from the applicable sentencing range.

### 6. Credit for Time Served

The court will not adjust the sentence to give Hancock credit for the sixty days he spent in a community treatment center pursuant to a modification of his Ohio probation. Under U.S.S.G. § 5G1.3(c), a sentencing court has discretion to impose either a concurrent, partially concurrent, or consecutive sentence on a defendant subject to an undischarged term of imprisonment.[7] However, application note six of section 5G1.3 states that "[i]f the defendant was on federal or state probation ... at the time of the instant offense, and has had such probation ... revoked, the sentence of the instant offense should be imposed to run consecutively to the term imposed for the violation of probation ... in order to provide an incremental penalty for the violation of probation[.]" U.S.S.G. § 5G1.3, app. n. 6. Although the Third Circuit has not addressed whether section 5G1.3(c), which is a policy statement, and

application note six are binding on a sentencing court, other circuits have reached contrary conclusions. *Compare, e.g., United States v. Alexander,* 100 F.3d 24, 26–27 (5th Cir.1996) (holding that section 5G1.3(c) is a policy statement that interprets a substantive guideline and therefore is binding on a sentencing court; holding that application note six is mandatory notwithstanding its use of the term "should"); *United States v. Gondek,* 65 F.3d 1, 3 (1st Cir.1995) (holding that an earlier version of application note six is mandatory on sentencing court), *with United States v. Maria,* 186 F.3d 65, 69 n. 4, 70–72 (2d Cir.1999) (declining to decide whether section 5G1.3(c) interprets a substantive guideline; holding that sentencing court retains discretion under application note six because of use of "should" rather than "shall" and because reference to incremental punishment suggests a "moderate additional penalty" rather than a full consecutive sentence). The court declines, however, to resolve these questions since it finds that even if it has the discretion to grant Hancock credit for time served, it will not do so.

### III. Conclusion

The atypical nature of the offense conduct and the defendant's aberrational behavior each provide a basis for departure. In the alternative, the combination of the foregoing factors, as well as the defendant's employment record, the nature of

and work record was not sufficiently unusual).

**7.** Here, Hancock has served in full the modification of his probation imposed as a result of his arrest on the instant offense. For purposes of deciding Hancock's request for a downward departure, however, the court assumes that 5G1.3(c) may also apply to fully discharged terms of imprisonment. *See United States v. Phipps,* 68 F.3d 159, 163 (7th Cir.1995) (noting, in dicta, that " § 5G1.3 may have some application if the federal sentence comes after the end of ... imprisonment").

The defendant implicitly relies on section 5G1.3(c), by invoking *Rios v. Wiley,* 201 F.3d

257, 269–71 (3d Cir.2000), in requesting a downward departure for time served, since the relevant portion of that opinion applies section 5G1.3(c). Subsection (a) applies only if a defendant has committed the instant offense while serving a term of imprisonment or after sentencing for, but before commencing service of, such a term of imprisonment and mandates a consecutive sentence. *See* U.S.S.G. § 5G1.3(a). Subsection (b) applies when (a) does not and the undischarged term of imprisonment results from offenses that have been taken fully into account in determining the offense level for the instant offense; in such instances, the sentence is to be concurrent. *See* U.S.S.G. § 5G1.3(b).

his employment, and his attempts to atone for his conduct by providing assistance to the government provide a basis for departure. Considered in isolation, neither the defendant's post-offense rehabilitation nor his acceptance of responsible warrant a departure. Finally, the court will not adjust its sentence in order to give Hancock credit for the time he served as a result of the modification of his probation.

An appropriate order follows.

## ORDER

**AND NOW**, this 5th day of May, 2000, upon consideration of defendant's sentencing memorandum and request for downward departure, the response thereto, other submissions of the parties, and after a hearing, it is hereby **ORDERED** that the request is **GRANTED** for the reasons specified in the foregoing memorandum.