**UNITED STATES of America,**

v.

**Adan ROSARIO, Defendant.**

**Criminal Action No. 00–645.**

United States District Court,
E.D. Pennsylvania.

March 12, 2001.

Louis D. Lappen, U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Def. Assoc., Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

Katz, Senior District Judge.

On November 22, 2000, defendant Adan Rosario pled guilty to an information charging him with armed robbery in violation of 18 U.S.C. § 2113(d). Mr. Rosario has filed a motion for a downward departure based on extraordinary acceptance of responsibility under U.S.S.G. § 5K2.0 and/or voluntary disclosure of offense under U.S.S.G. § 5K2.16. Mr. Rosario has also requested that this court recommend to the Bureau of Prisons that any sentence that it imposes run concurrently with any sentence he receives for his violation of supervised release, which is to be imposed at a future date by another court in this district. For the reasons discussed below, the motion for a downward departure is denied on both grounds, and the request for a recommendation of a concurrent sentence is also denied.

### I. Background

The bank robbery for which Mr. Rosario is being sentenced was committed on August 21, 2000. At the time of the crime, Mr. Rosario was on supervised release with the United States Probation Office as a result of an August, 1990 drug distribution conviction in this district. *See* Presentence Investigation Report (PSI) at ¶ 32. Several days prior to committing the bank robbery, Mr. Rosario called the Probation Office and asked to be picked up by the United States Marshals, because, as he admitted, he was "messing up" by using drugs. *See* Def.'s Sentencing Mem. Ex. E (Probation Office telephone log). The probation officers to whom he spoke urged him to report to either the Probation Office or a local hospital in order to receive drug treatment. *See id.* Mr. Rosario told the officers that he had no way of getting to the Probation Office, but that he would check himself into one of the hospitals. *See id.* He did not do so, and three days later, he committed the instant bank robbery. *See id.* Mr. Rosario's relapse into drug use, his attempt to seek help from the probation office, and the bank robbery itself all apparently coincided with his increasing desperation over his financial situation and the mental health problems of his common law wife. *See* PSI at ¶ 16; Def.'s Sentencing Mem. Ex. F (forensic evaluation of defendant, dated February 16, 2001).

Shortly after committing the robbery, Mr. Rosario again called the Probation Office, confessed that he had "messed up big time" and that he had "held something up," and agreed to turn himself in once he had a chance to say goodbye to his family. *See id.* He called once more twenty minutes later, providing the name and location of the bank he had robbed, and acknowledging that he had used some of the robbery proceeds to purchase crack cocaine. *See* PSI at ¶ 11. Later that evening, after his arrest, Mr. Rosario confessed the robbery to the police and admitted using a toy gun during the crime. *See* PSI at ¶ 12. He also revealed that as he fled from the bank, he had tossed from his car the toy gun, the baseball cap he wore during the robbery, and practically all of the stolen money as he believed that he was being chased by the police. *See id.*

## II. Departures

### A. Legal Framework

A court may depart downward from the applicable guideline range if it finds "a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0 (2000). A court must first determine whether the departure factor is forbidden, discouraged, or unmentioned by the Guidelines. *See Koon v. United States*, 518 U.S. 81, 94–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Iannone*, 184 F.3d 214, 226–27 (3d Cir.1999) (detailing 5K2.0 departure analysis to be employed after *Koon*); *United States v. Sally*, 116 F.3d 76, 80 (3d Cir.1997) (same). If the factor is encouraged, the court is authorized to depart if the applicable Guideline does not already take it into account. *Koon*, 518 U.S. at 96, 116 S.Ct. 2035. If the factor is discouraged, or encouraged but already taken into the account by the applicable guideline or listed as an appropriate consideration in applying an adjustment, a court can depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* In such cases, "the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive." U.S.S.G. § 5K2.0. The defendant has the burden of production and persuasion on a request for downward departure. *United States v. Higgins*, 967 F.2d 841, 846 n. 2 (3d Cir.1992).

### B. Acceptance of Responsibility

The Guidelines instruct that if the defendant "clearly demonstrates acceptance of responsibility for his offense," the offense level should be decreased by two levels. U.S.S.G. § 3E1.1(a). Additionally, if the offense level as determined prior to the operation of section 3E1.1.(a) is level 16 or greater, the defendant may qualify for an additional one-point reduction by either a) timely providing complete information concerning his own involvement in the offense or b) timely notifying authorities of his intention to plead guilty, thereby enabling the avoidance of trial preparation on behalf of the government and the efficient allocation of court resources. *See* U.S.S.G. § 3E1.1(b). The commentary to this Guideline lists eight nonexclusive factors that are "appropriate considerations" in determining whether to apply this Guideline: a) truthful admission of the offense conduct and truthfully admitting or not falsely denying additional relevant conduct, as described in U.S.S.G. § 1B1.3; b) voluntary termination or withdrawal from

criminal conduct or associations; c) voluntary payment of restitution prior to adjudication of guilt; d) voluntary surrender to authorities promptly after commission of the offense; e) voluntary assistance to authorities in recovering the fruits and instrumentalities of the offense; f) voluntary resignation from the office or position held during the commission of the offense; g) post-offense rehabilitation efforts; and h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n. 1.

■ Since the acceptance of responsibility is a factor already considered by the Guidelines, this court can depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon*, 518 U.S. at 96, 116 S.Ct. 2035; U.S.S.G. § 5K2.0. In the Third Circuit, acceptance of responsibility may serve as a basis for a downward departure "when the circumstances of a case demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present." *United States v. Lieberman*, 971 F.2d 989, 996 (3d Cir. 1992). In *Lieberman*, the Third Circuit upheld a departure where the defendant embezzled money from his employer, immediately resigned and agreed to pay $34,000 more in restitution than he pled guilty to, and explained to his employer how to detect similar embezzlement schemes in the future. *See id.* The Third Circuit has also held that for the purposes of a departure under section 5K2.0, a district court could consider a defendant's disclosure of his true identity, which would not otherwise have been discovered and which revealed his prior criminal record and his status as a fugitive. *See United States v. Evans*, 49 F.3d 109, 114 (3d Cir. 1995); *see also United States v. Faulks*, 143 F.3d 133, 137–38 (3d Cir.1998) (holding that defendant's agreement not to contest administrative forfeiture could be basis for downward departure when meritorious defenses were abandoned).

■ The court finds that a departure based on extraordinary acceptance of responsibility is not warranted in this case. Mr. Rosario's post-offense conduct is adequately addressed by section 3E1.1, which, as discussed previously, grants a reduction of up to three points based on such factors as truthful admission of offense conduct, voluntary and prompt surrender to authorities, voluntary assistance in recovering the fruits and instrumentalities of the offense, and timely manifestation of the acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n. 1; *Lieberman*, 971 F.2d at 996 (noting that defendant's immediate confession and resignation of his job alone did not "take him out of the usual case" addressed by section 3E.1.1); *see also* PSI at ¶¶ 17, 26 (granting three-point reduction pursuant to section 3E1.1). Furthermore, although Mr. Rosario's attempt to turn himself in even prior to committing the robbery and his confessions immediately afterward the robbery are evidence of his sincere motivation to do right and to minimize the harm caused by his conduct, his actions do not demonstrate a degree of acceptance of responsibility that is "substantially in excess of that ordinarily present" so as to warrant a departure.

## C. Voluntary Disclosure of Offense

The defendant also raises U.S.S.G. § 5K2.16 as a basis for a downward departure, which provides that

[i]f the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a departure below the applicable guideline range for that offense may be warranted. For example, a downward departure under this section might be considered where a defen-

dant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct.

Thus, a departure under section 5K2.16 is encouraged, and since the Guideline applicable to robbery, extortion and blackmail under which Mr. Rosario is sentenced, U.S.S.G. § 2B3.1, does not take into account voluntary disclosure of the offense, the court is authorized to depart on this basis.[1] *See Koon,* 518 U.S. at 96, 116 S.Ct. 2035. However, to grant a departure under section 5K2.16, a court must find 1) that the defendant voluntarily disclosed the existence of and accepted responsibility for the offense prior to its discovery; and 2) that the offense was unlikely to have been discovered otherwise. *See United States v. Besler,* 86 F.3d 745, 747 (7th Cir.1996) (citing *United*

*States v. Brownstein,* 79 F.3d 121, 123 (9th Cir.1996)) (other citation omitted). Furthermore, it is required a) that the defendant's disclosure is "motivated by guilt" and not merely by his or her fear of being discovered, and b) that "discovery is unlikely." *See Besler,* 86 F.3d at 747.

■ The court also finds that a departure is not warranted under section 5K2.16. The first requirement is not met, since the authorities knew of the offense on the day that the offense was committed. As to the second requirement, the court finds that there is evidence supporting that the defendant's motivation in confessing the crime was both guilt and a fear of discovery.[2] However, the final requirement—that the offense was not likely to be discovered—is clearly not met in this case. The offense conduct itself was already discovered, as it was a robbery committed openly in the public space of a bank, and it appears that the defendant's role in the offense was likely to be discovered as well. The defendant argues that his apprehension was unlikely because the

1. Although section 3E1.1 appears to overlap with section 5K2.16 to the extent that both address the acceptance of responsibility, section 5K2.16 also addresses voluntary disclosure and therefore may provide separate grounds for a departure. *See United States v. Jones,* 158 F.3d 492, 502 (10th Cir.1998) (rejecting argument that departure under section 5K2.16 was impermissible simply because three-level deduction was already granted under section 3E1.1, since section 5K2.16 "focus[ed] on the voluntariness of [the defendant's] disclosure, not simply his acceptance of responsibility"). *Cf. United States v. Hancock,* 95 F.Supp.2d 280, 288 (E.D.Pa.2000) (defendant's immediate admission of wrongdoing and desire to make amends by providing assistance to the government warranted three-point reduction under section 3E1.1, but did not qualify for further reduction under section 5K2.16).

2. As noted previously, Mr. Rosario's request to be taken into custody prior to the robbery

due to his drug use shows that the he possesses a genuine sense of personal responsibility. The court does not doubt that his disclosures concerning the robbery were motivated at least in part by a similar sense of responsibility, remorse, and guilt for his actions. *See* Def.'s Sentencing Mem. Ex. H (letter from defendant to the court, dated January 8, 2001). However, the defendant also admitted to disposing of the fruits and instrumentalities of the crime when fleeing from the bank because he thought believed a police car was chasing him, *see* PSI at ¶ 12, and the Probation Office telephone log reflects that during his second post-robbery phone call, the defendant stated that "I know the police are probably looking for me." *See* Def.'s Sentencing Mem. Ex. E. As discussed in the body of this memorandum, however, the court need not make a determination regarding these apparent dual motivations, since section 5K2.16 is clearly inapplicable on other grounds.

eyewitness descriptions of the perpetrator varied slightly, and because the defendant had not told anyone of his crime before confessing to his probation officer. However, the defendant was not wearing a mask at the time of the robbery, and bank surveillance cameras supplied photographs of above-average quality that showed the defendant engaged in the crime. Furthermore, the defendant was under active federal supervision at the time that he committed the crime. *See* PSI at ¶ 32. Since Mr. Rosario's role in the crime was likely to be discovered—albeit not as expeditiously—even if he had not voluntary disclosed the information himself, a departure under section 5K2.16 is not warranted. *See United States v. Thames,* 214 F.3d 608 (5th Cir.2000) (finding no error in denial of departure where bank robbery had already been "discovered" and defendant was already a suspect in that crime due to an informant's tip).

### III. Request That Sentences Run Concurrently

▮ The defendant also requests that the court recommend to the Bureau of Prisons that the sentence imposed for the bank robbery run concurrently with the sentence to be imposed for revocation of Mr. Rosario's supervised release. In support of his request, defendant cites U.S.S.G. § 5G1.3, application note 6, which states that

> [i]f the defendant was on federal or state probation, parole, or supervised release

at the time of the instant offense, and has had such probation, parole or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release.

The defendant argues that this application note, while suggesting that the sentences "should" be consecutive, leaves the court with discretion to impose a concurrent sentence.

It is first noted that any discretion that this court may have to order its sentence to run concurrently, partially concurrently or consecutively with another sentence originates in 18 U.S.C. § 3584(a), which states in part that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.... Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." However, whether a sentencing court retains any such discretion to impose a concurrently, partially concurrent or consecutive sentence in light of application note 6 has deeply divided the Circuits,[3] and the Third Circuit has not yet ruled on the issue.

More important to the case at bar, however, is the fact that section 5G1.3 and application note 6 are inapplicable to Mr.

**3.** *Compare United States v. Maria,* 186 F.3d 65, 70–73 (2d Cir.1999) (consecutive sentencing not mandatory), *United States v. Walker,* 98 F.3d 944, 945 (7th Cir.1996) (same, but strong presumption exists in favor of consecutive sentencing), and *United States v. Carver,* 160 F.3d 1266, 1268 n. 1 (10th Cir.1998) (noting, in dicta, the court's "skepticism" that a sentencing court is without discretion to impose a concurrent sentence) *with United States v. Goldman,* 228 F.3d 924, 944 (8th Cir.2000) (consecutive sentencing mandato-

ry), *United States v. Alexander,* 100 F.3d 24, 26–27 (5th Cir.1996) (same), *United States v. Bernard,* 48 F.3d 427, 431 (9th Cir.1995) (same, without discussion), and *United States v. Gondek,* 65 F.3d 1, 2–3 (1st Cir.1995) (earlier version of application note 6 mandatory). *See also United States v. McCulligan,* 2000 WL 1660033, at *5 (E.D. Pa. Nov. 3, 2000) (noting circuit split, finding Second Circuit's reasoning persuasive, and imposing partially concurrent sentence as one "consistent with fairness").

Rosario because he is not "already subject to an undischarged term of imprisonment," since he has not yet been sentenced with respect to the revocation of his supervised release.[4] The court agrees with the Tenth Circuit's reasoning, in an unpublished opinion, that application note 6

> by its terms ... applies only when the defendant *has had his probation revoked before sentencing on the new offense.* It is only under these circumstances that a defendant is subject to an undischarged term of imprisonment, which is a prerequisite to applying § 5G1.3. Because [the defendant's] probation was not revoked until after he was sentenced for the offense committed while on probation, application note 6 does not apply.

*United States v. Vaughn,* 211 F.3d 1279, 1279 (10th Cir. Apr.20, 2000) (rejecting argument that application note 6 mandates consecutive sentences where defendant has not yet been sentenced for revocation of probation) (table) (emphasis added, punctuation, citations omitted). The Third Circuit has indicated a similar position, *see Barden v. Keohane,* 921 F.2d 476, 483 (3d Cir.1990) (noting that the federal court was "unable to order concurrency because it sentenced [the defendant] before the state did"), as has the Seventh Circuit. *See Romandine v. United States,* 206 F.3d 731, 737 (7th Cir.2000) ("A judge cannot make his sentence concurrent to nonexis-

tent sentences that some other tribunal may or may not impose"). Similarly, another court in this district found section 5B1.3 inapplicable where, "although conviction for the [instant] bank robbery constituted a parole violation under state law, defendant had not yet been sentenced for that parole violation," and thus he was not already subject to an undischarged term of imprisonment. *See U.S. v. Hawkins,* 1996 WL 617430, at *3 (E.D.Pa. Oct.22, 1996) ("[U]nder federal law, an undischarged term of imprisonment requires that the defendant actually be incarcerated in a penal institution at the time of the sentencing in which he wishes to invoke § 5G1.3.") (citations, punctuation omitted); *see also United States v. McBride,* 2000 WL 13868029, at *2 (E.D.Pa. Sep. 13, 2000) ("A district court has no authority to make a sentence either concurrent or consecutive to a state sentence that has not been imposed."); *United States v. Means,* 124 F.3d 201, 201 (6th Cir. Sep.19, 1997) ("The law is clear that a federal district court does not have the power to impose a federal sentence to run concurrently with a state sentence that has not yet been imposed.") (table) (citations omitted); *United States v. Abro,* 116 F.3d 1480, 1480 (6th Cir. Jun.20, 1997) ("A district court does not have the authority to impose a federal sentence to run concurrently to a state sentence that had not yet been imposed.") (table).[5]

---

4. Mr. Rosario has been in federal custody since his arrest with respect to the bank robbery on August 21, 2000. According to the government, he has not yet been sentenced with respect to his revocation of supervised release. *See* Govt.'s Sentencing Mem. at Part V.

5. The court recognizes that concurrent or consecutive sentencings among federal and state courts may raise issues that are not present here, such as issues of dual sovereignty. *See, e.g., United States v. Clayton,* 927 F.2d 491, 492 (9th Cir.1991) (raising issue of infringement of state court's sovereignty).

The court also notes that a Circuit split exists as to whether a federal district court can require its sentence to run *consecutively* to a yet-to-be-imposed state sentence. *Compare United States v. Quintero,* 157 F.3d 1038, 1039–40 (6th Cir.1998) (federal court may not order sentence to run consecutive to yet-to-be-imposed state sentence), *Clayton,* 927 F.2d at 492–93 (same), and *Romandine v. United States,* 206 F.3d 731, 737–738 (7th Cir.2000) (same), *with Sally v. United States,* 786 F.2d 546, 547 (2d Cir.1986) (court may so order), *United States v. Brown,* 920 F.2d 1212, 1216 (5th Cir.1991) (same), *United States v.*

The court thus finds that it is without authority to order that the sentence imposed for the instant offense run concurrently with any sentence to be imposed for the defendant's revocation of supervised release. The court recognizes that the defendant in this case asks only that the court "recommend" to the Bureau of Prisons that the sentences run concurrently, rather than "order" such a circumstance, *see Barden v. Keohane,* 921 F.2d at 483 (only the Attorney General or the Bureau of Prisons as its delegate, and not the federal sentencing court, may order concurrency of federal and state sentences); however, the court declines to make such a recommendation.

*IV. Conclusion*

While the court recognizes that it has the discretion to depart, it will not do so in this case. The circumstances do not demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present, as required to warrant a departure under section 5K2.0. The requirements for a departure under section 5K2.16 have also not been met. Finally, section 5C1.3 and application note 6 do not apply in the circumstances of this case because the defendant is not already subject to an undischarged term of imprisonment, and the request for a recommendation of a concurrent sentence is denied.

### *ORDER*

**AND NOW,** this 12th day of March, 2001, upon consideration of the Defendant's Sentencing Memorandum, and the Government's Sentencing Memorandum, and after a hearing, it is hereby **ORDERED** that the defendant's motion for a downward departure under U.S.S.G. §§ 5K2.0 and 5K2.16 is **DENIED.**

*Williams,* 46 F.3d 57, 59 (10th Cir.1995) (same), and *United States v. Ballard,* 6 F.3d

**FURTHER ORDERED** that the request that the court recommend to the Bureau of Prisons that the sentence imposed run concurrently with any other sentence imposed for the defendant's violation of supervised release is also **DENIED.**

1502, 1510 (11th Cir.1993) (same, although limited to its facts).