UNITED STATES of America,

v.

Kenneth RANDOLPH, Appellant.

No. 02–3493.

United States Court of Appeals,
Third Circuit.

Argued Sept. 8, 2003.

Decided Oct. 20, 2003.

Patrick L. Meehan, United States Attorney, Laurie Magid, Deputy United States Attorney for Policy and Appeals, Robert A. Zauzmer, Assistant United States Attorney, Senior Appellate Counsel, George J. Shotzbarger (argued), Special Assistant United States Attorney, Philadelphia, Pa., for Appellee.

David L. McColgin (argued), Assistant Federal Defender, Supervising Appellate Attorney, Maureen Kearney Rowley, Chief Federal Defender, Federal Court Division, Defender Association of Philadelphia, Philadelphia, Pa., for Appellant.

Before BARRY, BECKER, and GREENBERG, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on Kenneth Randolph's ("Randolph") appeal from a judgment of conviction and sentence entered in this criminal case on September 9, 2002. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

The background of the case is as follows. On February 26, 2002, a grand jury indict-

ed Randolph for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Randolph previously had been convicted in the Court of Common Pleas of Philadelphia County of armed robbery, burglary and criminal conspiracy arising out of a March 24, 1994 home invasion gunpoint robbery. On March 27, 1995, the state court sentenced him to five to ten years imprisonment and, with credit for time served before the sentencing, he had served five years in prison as of March 25, 1999, on the state sentence. In late May 1999, the Pennsylvania Board of Probation and Parole ("parole board") directed him to serve nine months at GPCCC/Kintock ("Kintock"), a halfway house in Philadelphia. On July 17, 1999, Randolph absconded from Kintock, leading Robin Taylor, Randolph's parole agent, to obtain a warrant for his arrest.

After receiving a tip from a confidential informant as to Randolph's whereabouts and potential involvement in further criminal activity including drug trafficking and a shooting, Taylor and several other parole agents on the morning of April 25, 2000, went to the home of Randolph's sister, Felicia Randolph, looking for him. Ms. Randolph's daughter Melissa answered the door and then Ms. Randolph opened the door and permitted the agents to enter. She informed the agents that her brother was upstairs in his bedroom. Agents Howard White, Joseph Gillespie and Taylor proceeded up the stairs to arrest Randolph. As they walked up the stairs, Ran-

dolph walked into the hallway from one of the bedrooms wearing only boxer shorts. Taylor handcuffed him and she and Gillespie entered the bedroom that Randolph just had exited while White remained with Randolph in the hallway. In the bedroom they saw a cell phone and pager in plain view. Randolph's possession of these items was a violation of the conditions of his parole. The agents then lifted up the bed and frame in Randolph's bedroom and discovered a handgun and drug paraphernalia. On September 18, 2000, the parole board recommitted Randolph to state prison for 18 months for technical parole violations.[1]

After his indictment in February 2002, for possession of a weapon by a convicted felon, Randolph filed a motion to suppress the physical evidence obtained on April 25, 2000.[2] The district court held a hearing on Randolph's motion to suppress and then in a Memorandum and Order dated May 28, 2002, denied the motion. *United States v. Randolph*, 210 F.Supp.2d 586 (E.D.Pa. 2002). The district court found that the search of Randolph's bedroom was permissible for several different reasons. First, the district court held that as a parole absconder Randolph was not entitled to Fourth Amendment protections with respect to the search. In the alternative, the court found that the agents had reasonable suspicion to search the bedroom, the standard the Supreme Court adopted in *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), for

---

1. Though Randolph's act of absconding and his possession of the cell phone and pager were treated as technical parole violations, we think that most persons hardly would consider his flight to be a "technical" matter. It appears that in Pennsylvania a violation of a condition of parole is considered "technical" but a conviction of a crime while on parole is categorized separately. *See Gundy v. Commonwealth Bd. of Prob. & Parole*, 82 Pa. Cmwlth. 618, 478 A.2d 139, 140 (1984).

Thus, a parolee may be a "technical violator" or a "convicted violator," or, as here, both. *Id.*

2. Randolph also moved to suppress statements he made that day but at the hearing on the motion to suppress, he withdrew his motion to suppress the statements and we therefore are not concerned with them.

searches of probationers. The district court further concluded that the search Taylor and Gillespie conducted qualified as either a search incident to a lawful arrest or a proper protective sweep of Randolph's bedroom.

On June 3, 2002, Randolph entered a conditional plea of guilty to possession of a weapon by a convicted felon, pursuant to Federal Rule of Criminal Procedure 11(a)(2) and *United States v. Zudick,* 523 F.2d 848, 851–52 (3d Cir.1975). The district court subsequently sentenced Randolph to a 42–month custodial term. After colloquy with the attorneys regarding whether the sentence should be consecutive to or concurrent with the additional state time that the parole board would require Randolph to serve for the parole violation beyond the 18 months it already had ordered Randolph to serve, the court stated that the sentence "will be consecutive to whatever back-time the Commonwealth of Pennsylvania deems appropriate in this case." App. at 365. In the subsequent judgment of conviction and sentence, the district court, in accordance with its prior statement at the sentencing, ordered that "[t]he sentence imposed on this charge is to run consecutively with any back time the defendant may be facing in the Commonwealth of Pennsylvania." App. at 5. Of course, the sentence also was to be consecutive to the 18–month term the parole board already had assessed. After the district court sentenced him, the parole board held a revocation hearing and assessed Randolph an additional six months of state time predicated on his conviction in federal court.

On appeal Randolph challenges the district court's denial of his motion to suppress as well as the authority of the dis-

trict court to sentence him to a term consecutive to any future time the Commonwealth of Pennsylvania would order him to serve. We review the district court's denial of a defendant's motion to suppress for clear error with respect to its underlying factual findings and we exercise plenary review over the district court's application of the law to those facts. *United States v. Perez,* 280 F.3d 318, 336 (3d Cir.2002) (citing *United States v. Riddick,* 156 F.3d 505, 509 (3d Cir.1998)). Inasmuch as Randolph did not suggest in the district court that the court could not run the sentences consecutively with respect to state time to be imposed in the future, we review the district court's direction that he serve his federal sentence consecutively to any subsequent state sentence for his parole violation on a plain error basis.[3] Fed. R.Crim.P. 52(b); *United States v. Couch,* 291 F.3d 251, 252–53 (3d Cir.2002). Under this standard, in order to grant an appellant relief "we must find that (1) an error was committed; (2) the error was plain, i.e., clear or obvious; and (3) the error affected the [appellant's] substantial rights." *United States v. Knight,* 266 F.3d 203, 206 (3d Cir.2001). In addition, in exercising our discretionary authority to grant relief if we find plain error we are "guided by whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

■ We hold that the district court properly denied Randolph's motion to suppress. Even assuming that Randolph was entitled to the same level of Fourth Amendment protection afforded to probationers under *Knights,* 534 U.S. 112, 122 S.Ct. 587, it is clear that the parole agents

---

**3.** Notwithstanding the colloquy regarding whether the sentences would be concurrent or consecutive, Randolph acknowledges in his brief that we should apply the plain error standard on this point.

had reasonable suspicion to search the bedroom Randolph occupied in his sister's home. Randolph was a state parolee and fugitive who had absconded from a halfway house. Furthermore, a confidential informant had advised Taylor of Randolph's location and informed her that Randolph recently had been involved in drug trafficking and a shooting. To the extent that the informant was correct as to Randolph's whereabouts on April 25, 2000, he demonstrably was reliable as the agents found Randolph at the place the informant said he would be. In the circumstances, it surely was not unreasonable for the agents to search Randolph's bedroom when they were apprehending him. Indeed, we think that they probably would have been remiss if they had not made the search.

Randolph also challenges the district court's decision to sentence him "consecutively with any back time the defendant may be facing in the Commonwealth of Pennsylvania" with respect to the additional six months the parole board imposed following imposition of the federal sentence. App. at 5.

18 U.S.C. § 3584(a) (emphasis added) states:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is *already subject* to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

Randolph argues that he was not "already subject" to the six-month assessment when the district court sentenced him as the parole board made that assessment at a later date.

There is a split of opinion among the courts of appeals as to whether a district court may order a sentence to run consecutively to a sentence a state *court* has not yet imposed. *Compare Romandine v. United States,* 206 F.3d 731, 737–39 (7th Cir.2000) (stating that district court may not require its sentence to be served consecutively to a state sentence that will be imposed in the future because by its terms section 3584(a) only provides such authority in cases involving "an undischarged term of imprisonment"), *United States v. Quintero,* 157 F.3d 1038, 1039–41 (6th Cir. 1998) (holding that section 3584(a) "does not authorize district courts to order a sentence to be served consecutively to a not-yet-imposed state sentence"), *and United States v. Clayton,* 927 F.2d 491, 492–93 (9th Cir.1991) (finding that "Congress did not vest federal courts with the authority to impose a federal sentence to run consecutively to a state sentence that has not yet been imposed."), *with United States v. Williams,* 46 F.3d 57, 58–59 (10th Cir.1995) (holding that district court had the authority under section 3584(a) to order defendant to serve his federal sentence consecutively to any sentence of imprisonment imposed in two state cases pending at the time of his federal sentencing and did not abuse its discretion in doing so), *United States v. Ballard,* 6 F.3d 1502, 1507 (11th Cir.1993) (finding that district court did not interfere with the state's sentencing authority when it ordered defendant's federal sentence to be served consecutively to an unimposed state sentence where de-

fendant "deliberately and admittedly committed his federal offense with the intention of ... avoiding state incarceration"), *and United States v. Brown,* 920 F.2d 1212, 1215–17 (5th Cir.1991) (holding that district court did not abuse its discretion "in determining that Brown's crime warranted a sentence consecutive to any sentence imposed in pending state proceedings").

The government in effect views this conflict as immaterial in the present context as it maintains that inasmuch as the Court of Common Pleas initially sentenced Randolph in 1995 to a five to ten-year custodial term, he already was subject to an undischarged term of imprisonment under section 3584(a) that included the six months the parole board later assessed when the district court sentenced him. Therefore, according to the government, the additional time the parole board assessed on Randolph both by reason of his technical violations of the conditions of parole and because he committed a crime while on parole, including the six-month period the parole board assessed following his district court sentencing, should be regarded as having been imposed earlier by the state court. Thus, in the government's view, the sentence the district court imposed was lawful inasmuch as the district court undoubtedly had the authority to require Randolph to serve his federal sentence consecutively to his previously imposed term of state imprisonment.

Viewing this matter under state law, the government's argument has considerable force. In *Gundy v. Commonwealth Board of Probation & Parole,* 82 Pa.Cmwlth. 618, 478 A.2d 139 (1984), a parolee who had been convicted of another crime while on parole petitioned for review of the parole board's order recommitting him as a technical violator and as a convicted violator. Among other things, Gundy claimed that

the parole board's actions in recommitting him violated double jeopardy protections. The court disagreed, as it indicated that "the [parole board's] revocation proceedings are *not* part of a criminal prosecution but rather basically [are] administrative proceedings...." *Id.* at 141 (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The *Gundy* court then went on to state that

> [t]he [parole board's] imposition of backtime was not the imposition of a new sentence but merely the directed completion of the original judicially-imposed sentence. The sentence imposed for a criminal offense is the maximum sentence and the minimum sentence merely sets the date prior to which a prisoner may not be paroled.

*Gundy,* 478 A.2d at 141 (citing *McClure v. Commonwealth Bd. of Prob. & Parole,* 75 Pa.Cmwlth. 176, 461 A.2d 645 (1983)).

Yet notwithstanding *Gundy* the government's argument is not necessarily correct. Though it is true that the Court of Common Pleas sentenced Randolph in 1995 to serve a five to ten-year custodial term and that he served five years in state prison prior to being paroled to Kintock, thereafter the parole board rather than the court had the authority to order Randolph to serve additional periods of custodial time for his parole violations or to revoke his parole. As a result, at the time of his federal sentencing we question whether Randolph was "already subject" to the six months of imprisonment the parole board later ordered him to serve within the meaning of section 3584(a). We express this reservation as Congress may have intended that the term "already subject" be viewed from a national perspective not dependent on state law with respect to how the imposition of an assessment of an additional period of incarceration on a parole violation is viewed. But, as we shall ex-

plain, we need not decide whether the government is correct because, regardless of *Gundy*, Randolph is not entitled to relief.

Section 5G1.3 of the United States Sentencing Guidelines addresses the imposition of a sentence on a defendant subject to an undischarged term of imprisonment. In particular Application Note 6 states in pertinent part:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and *has had such probation, parole, or supervised release revoked,* the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole or supervised release.

U.S.S.G. § 5G1.3, Application Note 6 (2001) (emphasis added) (citation omitted).

Randolph acknowledges that the district court could provide, as it did, that its sentence would be consecutive to the additional 18–month period of incarceration the parole board earlier had assessed by reason of his technical parole violations. Thus, the dispute here centers on the fact that after his federal sentencing, the parole board required Randolph to serve an additional six months. But as of the time of his federal sentencing, his *"probation, parole, or supervised release"* had not been revoked as to the six months. Accordingly, inasmuch as Application Note 6 is not forward looking, it is questionable whether it gave the district court the authority to order Randolph to serve the sentence it imposed consecutively to any additional time the parole board thereafter might impose. *See United States v. Rosario,* 134 F.Supp.2d 661, 667 (E.D.Pa.2001) ("[A]p-plication note 6 'by its terms ... applies only when the defendant *has had his probation revoked before sentencing on the new offense.'* ") (alteration in original) (quoting *United States v. Vaughn,* 211 F.3d 1279 (table), No. 99–7012, 2000 WL 472843, at *2 (10th Cir. Apr. 20, 2000)). Thus, notwithstanding *Gundy,* it may not be possible to justify the district court's sentence under U.S.S.G. § 5G1.3 on the theory that the state had imposed the six-month state term earlier. Accordingly, it might be thought that we would have to address the conflict among the courts of appeals that we identified above as to whether a district court may order a sentence to run consecutively to a not yet court-imposed state sentence.

Yet, as the Court of Appeals for the Seventh Circuit recognized in *Romandine,* the division of opinion as to whether a district court has the authority to order its sentence to be served consecutively to a later imposed state prison term is illusory because of the last sentence in section 3584(a), which states that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *See Romandine,* 206 F.3d at 738 ("the final sentence of § 3584(a) makes the federal sentence presumptively consecutive in all unprovided-for cases"). Therefore, if the district court had not addressed whether Randolph's sentence would be consecutive or concurrent to a later imposed period of incarceration for his parole violation, section 3584(a) would have required that the sentences be consecutive as they unquestionably were multiple terms of imprisonment imposed at different times regardless of whether we view the six months as having been imposed by the court before or the parole board after the federal sentencing. As a result, Randolph would have had to serve his federal

and state sentences consecutively even if the district court had not ordered him to do so.

We emphasize that we are not holding that the parole board's action in requiring Randolph to serve the six-month term is a sentence within the meaning of section 3584(a) or perhaps more precisely in the language of that section a "term[ ] of imprisonment." Rather, we have no need to determine whether it should be characterized in that way. Our point is that whether the six-month term is, in harmony with *Gundy*, regarded as having been imposed by the state court or whether it is regarded as having been imposed by the parole board the district court did not commit plain error in directing that the sentence it imposed be served consecutively to that six-month term.

■ In the circumstances, even assuming that *Gundy* is not applicable here and that the district court did not have the authority to order Randolph to serve his two terms of imprisonment, i.e., the federal sentence and the six-month state term, consecutively, such error certainly does not constitute plain error, inasmuch as it did not affect the length of time Randolph is to spend in custody. *See Knight*, 266 F.3d at 206–07. As we made clear in *Barden v. Keohane*, 921 F.2d 476, 483–84 (3d Cir.1990), and the Court of Appeals for the Seventh Circuit explained in *Romandine*, a defendant in Randolph's position must serve his state and federal terms of imprisonment consecutively unless he can convince the Bureau of Prisons to designate the state prison as "the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); 18 U.S.C. § 3621(b); *Barden*, 921 F.2d at 481–84; *Romandine*, 206 F.3d at 738–39. If the Bureau of Prisons makes such a designation, the federal and state sentences effectively will be concurrent. But regardless of what the Bureau of Prisons may or may not do, the district court's direction that the sentence be served consecutively in itself made no difference and consequently could not be a plain error.

Accordingly, we will affirm the judgment of conviction and sentence of the district court entered September 9, 2002.